[L. A. No. 20928. In Bank. Mar. 14, 1949.]

CITY OF COMPTON et al., Petitioners, v. ROY L. O. ADAMS, as City Treasurer, etc., Respondent.

Ralph K. Pierson, City Attorney (Compton), and Samuel P. Block for Petitioners.

Bernard Lawler for Respondent.

GIBSON, C. J.—This proceeding was brought to compel payment of the costs of publishing an ordinance calling for

a special election to determine whether a municipal court should be established in the city of Compton. Respondent city treasurer refused to pay the publication charges on the ground that the city council had no authority to call the special election because the population of the city as shown by the decennial census of 1940 was less than that required for the establishment of a municipal court. Section 11 of article VI of the Constitution provides that such a court may be established in a chartered city "containing a population of more than forty thousand inhabitants, as ascertained by the last preceding census taken under the authority of the Congress of the United States."

In 1948, the city of Compton requested the taking of a census of the city, the Secretary of Commerce of the United States directed that such a census be taken, and the city entered into an agreement to pay the costs thereof. The enumeration was made by the Bureau of the Census upon official schedules of the Department of Commerce, entitled "Special Population Census Schedule," which listed the name, address, sex, color, and age of each person, with his relationship to the head of the house and the number in the household. On December 14, 1948, the Director of the Bureau officially announced the result of the census and certified that the city had a population of 42,789 inhabitants. Thereafter the city council passed an ordinance calling for the special election, the ordinance was published as required by the city charter, and the city treasurer refused to pay the cost of publication. The matter has been submitted on a general demurrer to the petition which alleges the foregoing facts.

The question presented is whether the 1948 census is "the last preceding census taken under the authority of the Congress of the United States" within the meaning of section 11 of article VI.

A census has been defined as "an official enumeration of the population of a country or of a city or other administrative district, generally with classified information relating to social and economic conditions." (Webster's New Int. Dict. (2d ed.), 1941; see *In re Cleveland's Claim,* 72 Okla. 279 [180 P. 852, 855].) No objection is raised as to the accuracy of the special census of 1948, which appears to have been taken by a house-to-house canvass in a manner similar to that employed in taking a decennial census, but the city treasurer contends that the 1948 census was not taken "under the

authority of the Congress'' since it was not authorized by specific legislation.

It is not essential, however, that there be express statutory authority when the power is necessarily implied and included in the authority which is expressly granted. (See *Southern Pac. Co.* v. *Olympian D. Co.*, 260 U.S. 205, 208 [43 S.Ct. 26, 67 L.Ed. 213] ; *Bank of Italy* v. *Johnson,* 200 Cal. 1, 20 [251 P. 784] ; *Penrose* v. *Ventnor City,* 80 N.J.L: 547 [77 A. 1061, 1062].) And it appears that for many years the Bureau of the Census has taken special censuses of various regional areas. (See *In re Cleveland's Claim,* 72 Okla. 279 [180 P. 852] ; World Almanac, 1948, p. 240.) The Secretary of Commerce is authorized by statute to make such investigations and reports as he ''may deem necessary and urgent'' (32 Stats. 829, 5 U.S.C.A. § 604), and special censuses are taken pursuant to this authority. In 1947 the secretary instructed the Director of the Bureau of the Census to collect, compile and publish statistical information on the population, housing, and agriculture of the United States, and in addition, as we have seen, he specifically directed the taking of the special census of 1948. No reason appears or is suggested why such authorization does not come within the meaning of the phrase ''under the authority of the Congress of the United States'' as used in section 11 of article VI. The requirement that the population of a city be ascertained by reference to a United States census was apparently adopted so that it could be definitely established, by reference to an official report, whether a city could establish a municipal court, and the 1948 census fulfills this purpose, since it was officially taken and the result was officially announced and certified by the Director of the Bureau.

Section 11 of article VI does not require that the census taken under authority of Congress be the decennial census, and it is significant that in other provisions of the Constitution, where the intent is to restrict the meaning and require reference to the national decennial census to ascertain population, the Constitution expressly so provides. For example, section 6 of article IV, relating to reapportionment of assembly districts, expressly refers to the ''decennial federal census.'' (*Cf.,* Const., art. XI, §§ 7½a, 8.) It appears therefore that the census in the present case, having been officially taken by the Bureau of the Census under the authority of Congress, comes within the provisions of section 11 of article VI. Accordingly, the city treasurer was under ·a duty

to pay the costs of publishing the ordinance calling for the special election.

Let a peremptory writ of mandate issue as prayed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—This proceeding, brought by the city against one of its officers, may be properly characterized as a collusive one. It is significant that on the same day the alternative writ of mandate issued, counsel for the city treasurer filed a demurrer to the petition and a stipulation that the matter might be submitted without argument. I cannot condone the practice of rendering what amount to advisory opinions in litigation which has the form but not the substance of adversary presentation. (See dissent in *City of Whittier* v. *Dixon,* 24 Cal.2d 664, 668 [151 P.2d 5, 153 A.L.R. 956].)