Taft, J.
The question to be decided is whether an enumeration of the inhabitants of a village at a particular time, made by the Bureau of the Census of the United States Department of Commerce at the request of that village and pursuant to a contract between that village and the Department of Commerce, is included within the meaning of the words, “any federal census,” as those words are used in Sections 703.01 and 703.06, Revised Code. If it is, then the writ of mandamus should have been allowed; and, if not, it was properly denied.
In stating the question to be decided, we have used the words, “enumeration of the inhabitants,” because the Attorney G-eneral, in arguing that such enumeration was not a “federal census,” has suggested that it would not even be recognized under the federal laws as a census.
The authority for such an enumeration by the Bureau of Census of the United States Department of Commerce is found in Section 8 (b) of Title 13, United States Code, which reads:
“The secretary may furnish transcripts or copies of tables and other census records and make special *245 statistical compilations and surveys for state or local officials, private concerns, or individuals upon the payment of the actual, or estimated cost of such work.”
In contrast with the words, “statistical compilations and surveys,” the Attorney General refers to the part of Section 141 of Title 13, United States Code, which reads:
‘ ‘ The secretary shall, in the year 1960 and every ten years thereafter, take a census of population * * * in each state.”
It may be observed that the taking of a census will necessarily involve the making of “statistical compilations and surveys”; and that the authority expressly given by Section 8 (b) of Title 13, United States Code, to make such compilations and surveys, especially since it is given to the officer generally authorized to take censuses and given in connection with other language providing for furnishing copies of “census records,” quite clearly includes authority to take a census for local officials on the payment of the cost thereof.*
Furthermore, it may be observed that provision for or suggestion of any federal census apparently originated in the third paragraph of Section 2 of Article I of the Constitution of the United States, which uses *246 the words, “enumeration” of “persons,” to describe what we usually refer to as a census. The word, “census,” is not used in those constitutional provisions.
Likewise, the words of Ohio statutes relative to classification of cities and villages have frequently expressly regarded an “enumeration” of the persons living in a particular locality as a “census” of that locality. See, for example, Sections 703.05, 703.06, 703.11, 703.12, 703.13, 703.14 and 703.15, Revised Code.
In our opinion, therefore, the Court of Appeals in its findings correctly described the “enumeration” in question in the instant ease as a “census.” See Cahill v. Leopold, Secy. of State, 141 Conn., 1, 103 A. (2d), 818, 823, 832.
Since this “census” was taken by the federal government pursuant to federal laws authorizing its taking, it was obviously a “federal census.” In re Cleveland’s Claim, 72 Okla., 279, 282, 180 P., 852, 855. See City of Compton v. Adams, Treas., supra. There is nothing in the words of these Ohio statutes to indicate that, by the words, “any federal census,” the General Assembly did not intend to describe a “census” authorized by federal law unless it was directed by federal law.
It is pointed out that the proclamation, provided for in Section 703.06, Revised Code, is to state “the names of all municipal corporations” and “the population of all such municipal corporations” and is to be sent to “the mayor of each such municipal corporation”; and that the statute further provides that “30 days after the issuance of such proclamation each municipal corporation shall be a city or village as the case may be. ’ ’ It is argued that, since every municipal corporation in the state was to be dealt with and apparently affected by this proclamation, the General Assembly did not intend to provide for a proclamation to be issued as a result of a special census of a single municipal cor *247 poration but intended to provide only for a proclamation to be issued as a result of a state-wide census. There is much force to this argument. Cf. Sprout, Tax Collector, v. State, ex rel. Smith, 153 Fla., 892, 16 S. (2d), 109. Thus, it would seem unnecessary to have such a comprehensive proclamation as a result of a special census of a single municipal corporation if the General Assembly intended that such a census might operate to effect the transition of a single municipal corporation from the status of a village to that of a city.
However, as we know, the General Assembly sometimes provides for cumbersome administrative procedures. Certainly, the provisions with respect to this proclamation are not necessarily inconsistent with a legislative intent that a special federal census of a single municipal corporation should operate to effect its transition to the status of a city. At most, therefore, these provisions with respect to the proclamation raise a doubt as to whether the words, “any federal census,” were intended to include a federal census of a single municipal corporation; and they thus create only an ambiguity with respect to the meaning of those statutory words.
It is further pointed out that the next to the last sentence of Section 703.01, Bevised Code, requires a determination of the number of college or university students in attendance at an educational institution in a municipal corporation and provides for not counting certain ones of them in determining the population of such municipal corporation for purposes of classification as a city, and that the last sentence of Section 703.01, Bevised Code, provides for “a proclamation” after each decennial census certifying the number of permanent residents and the number of students in a municipal corporation. It is then argued that, since the student enumeration must be made in order *248 to make the proclamation provided for in Section 703.06, Revised Code, the proclamation referred to in Section 703.01, Revised Code, is a part of the one referred to in Section 703.06, Revised Code, and is to be made by the very words of Section 703.01, Revised Code, only “after each decennial census.” Again, there is much force to this argument.
However, it may be observed that the last sentence of Section 703.01, Revised Code, refers to “a proclamation” and the first sentence of Section 703.06, Revised Code, also refers to “a proclamation.” Although, after a decennial census, one proclamation could be made containing all that is required in “a proclamation” by the last sentence of Section 703.01,. Revised Code, and all required in “a proclamation” by the first sentence of Section 703.06, Revised Code, the General Assembly has not expressly provided for only one such proclamation. Furthermore, the Secretary of State could comply with the provisions of the next to the last sentence of Section 703.01, Revised Code, and make the proclamation provided for by the first sentence of Section 703.06, Revised Code, without making the proclamation required by the last sentence of Section 703.01, Revised Code, or before making that latter proclamation. These last two sentences of Section 703.01, Revised Code, were added to that statute by amendment in 1951. The General Assembly may well have intended to provide specific information with regard to students after each decennial census without intending to require such information after any other federal census or even requiring the inclusion of all such information in the proclamation required by the first sentence of Section 703.06, Revised Code. At most, we believe that these two sentences of Section 703.01, Revised Code, raise a doubt as to whether the words, ‘ ‘ any federal census, ’ ’ were intended to include a federal census other than a decennial federal census, *249 and thus create only an ambiguity with respect to the meaning of those statutory words.
We believe that the policy, with respect to classification of cities and villages, as expressed in Section 1 of Article XVIII of the Ohio Constitution, is helpful in resolving the hereinbefore-mentioned ambiguities with respect to the meaning of the words, “any federal census,” in Sections 703.01 and 703.06, Revised Code.
In Murray v. State, ex rel. Nestor, 91 Ohio St., 220, 110 N. E., 471, Ann. Cas. 1916D, 864, this court held that that constitutional provision was “not self-executing” and that statutes similar to Sections 703.01 and 703.06, Revised Code, could “regulate the method of transition of municipal corporations from one class to the other. ’ ’ Since the statutes involved in that case provided for the transition only on the basis of a “federal census,” such transition was not recognized on the basis of a census not made pursuant to federal authority.
This constitutional provision does definitely state that “all such [municipal] corporations having a population of five thousand or over shall be cities.” Although it further states in effect that “the method of transition” to the status of a city “shall be regulated by law, ’ ’ we believe that, in case of an ambiguity with respect to statutes so regulating such transition, any such ambiguity should be resolved in favor of expediting rather than impeding or delaying such transition. Otherwise, there would be a tendency to defeat the expressed primary intent that a municipal corporation having a population of over five thousand should be a city and one having under that population should be a village.
We therefore conclude that the census in question in the instant case is described by the words, “any federal census,” as used in Sections 703.01 and 703.06, Revised Code. It follows that the judgment of the *250 Court of Appeals must be reversed and tbe peremptory writ of mandamus allowed.

Judgment reversed and writ allowed.

Matthias, Stewart and Bell, JJ., concur.

Prior to the August 31, 1954, revision of Title 13 of the United States Code, it would appear that, under those provisions of the United States Code (1952 Edition, Title 13, Section 218) upon which Section 8 of Title 13 is based, there was no authority to make such a special census since the “compilations and surveys” contemplated were only those “from * * * census records” and statutory provision was apparently made only for decennial censuses. Apparently, such special censuses were then taken pursuant to the provisions of Section'604 of Title 5, United States Code, authorizing the Secretary of Commerce to “make such special investigations and reports * * * which he himself may deem necessary and urgent.” City of Compton v. Adams, Treas., 33 Cal. (2d), 596, 203 P. (2d), 745.