286 P.2d 752

STATE of Arizona, ex rel. Robert MORRISON, Attorney General of the State of Arizona, Plaintiff,

v.

William W. NABOURS, Defendant.

No. 6097.

Supreme Court of Arizona.

July 15, 1955.

Robert Morrison, Atty. Gen., of the State of Arizona, for plaintiff.

Brandt & Baker, Yuma, for defendant. Byrne, Green & Benton, Robert W. Nebeker, J. Duke Cameron, William P. Copple, Rolle, Jones & Pace, Linwood Perkins, Jr., Yuma, of counsel.

Marshall W. Haislip, Phoenix, John E. Madden, Phoenix, for Maricopa County Bar Assn., P. Preston Sult, Eloy, for Pinal County Bar Assn., amici curiae.

PER CURIAM.

This is an original proceeding in quo warranto instituted by the Attorney General of the State of Arizona to exclude the defendant, William W. Nabours, from the office of Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, upon the ground that he has usurped, intruded into and unlawfully purports to hold that office.

On the 21st day of June, 1955, the Governor of the State of Arizona purportedly

appointed defendant to said office to be effective July 1, 1955. On June 6, 1955, the Board of Supervisors of Yuma County passed a resolution petitioning the Governor of the State of Arizona for approval of an additional judge of the superior court for that county. The Governor, concurring in this petition, made the appointment. Defendant qualified by filing his oath of office with the secretary of state on the 28th day of June, 1955. On July 1, 1955, defendant admittedly assumed the office and claims that he is rightfully and lawfully entitled to the same.

The Board of Supervisors was actuated to make this petition by a desire to make available to the County of Yuma an additional judge to expedite the court's law business that was thought to be in excess of the ability of one judge to perform. The Board exercised the discretion vested in it by the provisions of Section 19–301, A.C.A.1939, as amended by 22d Legislature, 1st Regular Session, c. 136, effective April 13, 1955. The amended section as far as applicable reads as follows:

"19–301. Number of courts and judges. In each county of the state there shall be a superior court for which at least one judge shall be elected. In each county having a census enumeration greater than thirty thousand inhabitants, and upon petition by the board of supervisors of such county to the governor of Arizona and his approval thereof, there shall be an ad-

ditional judge of the superior court for each additional thirty thousand inhabitants, or majority fraction thereof.

"For the purpose of this Act the counties of Maricopa, Pima, Pinal and Yuma are hereby declared to have, and shall be held to have, inhabitants respectively, in excess of 460,000, 205,000, 55,000 and 45,000."

It is the contention of the relator that the purported appointment is and was without authority of law, and a nullity, and of no force or effect, for the reason and on the ground that said amendment arbitrarily fixing the population of the counties of Maricopa, Pima, Pinal and Yuma, is in contravention of Section 5, Article VI of the Arizona State Constitution, which provides as follows:

"There shall be in each of the organized counties of the state a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general election; Provided, that for each county *having a census enumeration* greater than thirty thousand inhabitants, one judge of the superior court for every additional thirty thousand inhabitants, or majority fraction thereof, may be provided by law. * * *" (Emphasis supplied.)

The relator in his complaint alleged that there has been no census taken of Yuma

County, Arizona, showing a census enumeration of said county as exceeding a majority fraction of 30,000 population over and above the basic 30,000 population, as required by Article VI, Section 5, of the Constitution of Arizona. In his response the defendant denied this allegation. We take it that by his denial he means nothing more than to deny that a census enumeration means a counting singly of inhabitants. It is tacitly admitted in defendant's brief that prior to the action of the Board of Supervisors there had been no actual counting of inhabitants of Yuma County since the 1950 Federal census, which showed Yuma County to have a population of 28,006.

It is clear that by the provisions of Section 5, Article VI of the Constitution, supra, there has been granted to the legislature the power to create additional judgeships only within limitations. The legislature can only authorize additional judges in the event a county has the requisite population measured by a census enumeration. This necessarily prohibits the legislature from making such determination by any other method. In Collins v. Krucker, 56 Ariz. 6, 104 P.2d 176, 177, this court in construing this section had occasion to say:

"It is apparent from this that the question as to whether the various counties shall have more than one judge of the superior court, when the census population exceeds 45,000, de-

pends upon the will of the legislature, for the phrase 'may be provided by law', with no other qualification, is invariably held to refer to action by that body. We must, therefore, determine what it has decided upon this subject. * * *"

Defendant argues that as an incident to this grant of power it follows that the legislature must of necessity make a factual determination of population as a predicate to the creation of any new judgeship, and therefore the method and means of such determination is a legislative function. The weakness of this is that the Constitution itself has prescribed the method which must be used in making such determination, that is to say, by "a census enumeration". There is not only no occasion for the legislature to prescribe a method, but it must use the method prescribed by the Constitution.

By Section 32 of Article II of the Constitution it is provided that:

"Provisions of this constitution are mandatory, unless by express words they are declared to be otherwise."

In State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884, 892, it was pointed out that the word "mandatory" as used in this constitutional provision is defined as a command and hence obligatory, with which we must implicitly follow and obey. We

reiterate with approval the statement that was there made that

"It is a salutary rule of construction that the presumption and legal intendment is that each and every clause in a written Constitution has been inserted for some useful purpose, * * *."

With this constitutional provision in mind, and realizing that the words under consideration, "a census enumeration", were intentionally inserted in the Constitution for a purpose, it devolves upon us to discover and discern what that purpose was, if in truth and fact the words are not self-explanatory. In the same Osborne case it was said:

"The provisions of the Constitution must be a limitation upon the legislative power, else they would not have been placed in the organic law. A state Constitution, unlike the federal Constitution, which is a delegation of powers, is restrictive. If the Constitution had remained silent as to the time for election of state, county, and precinct officers, and the tenure of office was not otherwise fixed in the instrument, it could not be questioned that the power of the Legislature, with regard to fixing the time for such election, would have been absolute. But the Constitution fixing the time for such election, an act of the Legislature fixing a different date is so far repugnant thereto and to that extent the legislative act must fail. The Constitution in conferring on the Legislature authority has prescribed to its exercise any limitations which the people saw fit to impose, and no other power than the people can superadd other limitations; neither can any other power than the people strike from the fundamental law any limitations which the people have prescribed therein."

We feel that we could do no better than to paraphrase the above quotation as follows:

If the Constitution had remained silent as to what number of inhabitants and how ascertained would authorize an additional judgeship, it could not be questioned that the power of the legislature with regard to fixing the number of inhabitants which would authorize an additional judgeship, would have been absolute. But the Constitution having fixed the number of inhabitants and the method of their ascertainment, an act of the legislature fixing a different method of ascertainment is repugnant thereto and to that extent the legislative act must fail.

Our Constitution authorizes the creation of additional judgeships for each county, for every additional 30,000 inhabitants or majority fraction thereof (in excess of the

basic 30,000) as shown by "a census enumeration". The question presented is: what do these words "a census enumeration" mean? In attempting to discern their meaning we feel that it is well to enunciate some fundamental rules of Constitution and statutory construction.

 It is generally conceded that a Constitution should be construed so as to ascertain and give effect to the intent and purpose of the framers and the people who adopted it. Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co., 39 Ariz. 65, 4 P.2d 369; State ex rel. Jones v. Lockhart, 76 Ariz. 390, 265 P.2d 447. The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption. Especially should effect be given to the purpose indicated, by a fair interpretation of the language used, and unless the context suggests otherwise words are to be given their natural, obvious and ordinary meaning. We are ever alert to the rule of this court that no act of the legislature will be declared unconstitutional unless we are convinced beyond a reasonable doubt that it contravenes the Constitution. State v. Harold, 1952, 74 Ariz. 210, 246 P.2d 178, 180. Nevertheless, whenever a statute is challenged as being unconstitutional this court should scrutinize it very carefully, and no matter what its form if its true purpose and effect is to violate a constitutional provision it will be held

void. Caldwell v. Board of Regents, 54 Ariz. 404, 410, 96 P.2d 401.

In determining what the ordinary meaning of a word is no better source and authority is to be found than reference to a recognized dictionary. Webster's New International Dictionary of the English Language, 2d edition unabridged, indicates that the word "census" is from the Latin word *censere*. Historically, in the Roman language census meant "a numbering of the people". Webster says that census is "an official enumeration of the population of a country, or of a city or other administrative district". Judicially it has been defined as "* * * a finding of the population and not an estimate * * *." State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S.W. 591, 597. In the City of Huntington v. Cast, 149 Ind. 255, 48 N.E. 1025, a census was held to be an official enumeration of the inhabitants of a state or county, or an official reckoning or enumeration of the inhabitants. In the case of Vale Independent Consol. School Dist. No. 2 of Butte County v. School Dist. No. 71 of Meade County, 54 S.D. 207, 222 N.W. 948, it was held that census in its *ordinary* meaning refers to an official enumeration of the population of a county or district. There are numerous other cases to the same effect.

The word "enumerate" means "To designate, or specifically mention, to mention in detail, or reckon up singly * * *."

30 C.J.S., p. 289. This authority further states that the term "enumeration" has been distinguished from "computation". It is said that a computation is "The act of computing, numbering, reckoning, or estimating * *. *." 15 C.J.S., p. 791.

■ It seems to us that the word "census" and the words "to enumerate" and "census enumeration" had a very well-defined meaning in 1910 at the time of adoption of the Constitution, and the same meaning that they have today. A *census enumeration* means the singly counting up of the population.

■ The wisdom of the Constitution framers in limiting additional judgeships to counties having a population in excess of 30,000, to be found by census enumeration as we have construed it, was for that body and not this court nor the legislature. We are firmly of the conviction that these words, as found in the Constitutional provision, are words of *limitation,* and being such the legislature is, by the Constitution, precluded from *substituting* for "a census enumeration" a declaration that the counties of Maricopa, Pima, Pinal and Yuma have a population in excess of certain named amounts determined other than by "a census enumeration", i. e., an official counting of heads, compiled by the Federal government or the state or the county.

■ We hold that the paragraph of the Act under consideration, reading as follows,

"For the purpose of this Act the counties of Maricopa, Pima, Pinal and Yuma are hereby declared to have, and shall be held to have, inhabitants respectively, in excess of 460,000, 205,000, 55,000, and 45,000."

is unconstitutional and void for the reasons herein set forth. In view of the fact that said S.B. 165, supra, purporting to amend Section 19–301, A.C.A.1939, contains a severability clause, we conclude and hold that said Act, except as herein indicated, is valid.

In view of our determination herein it appears that defendant, William W. Nabours, is guilty of intruding into and usurping the office of Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, and that his claim thereto is without right. He is therefore ordered ousted and excluded from said office.

LA PRADE, C. J., and UDALL, WINDES, PHELPS and STRUCK-MEYER, JJ., concur.