317 P.2d 567

**CITY OF BISBEE, a municipal corporation of the State of Arizona, Appellant,**

v.

**E. T. WILLIAMS, Treasurer of the State of Arizona, Appellee.**

No. 6364.

Supreme Court of Arizona.

Nov. 5, 1957.

———◆———

James F. McNulty, Jr., Bisbee, for appellant.

Robert Morrison, Atty. Gen., and James H. Green, Jr., First Asst. Atty. Gen., for appellee.

CHARLES P. ELMER, Superior Court Judge.

This is an action for declaratory judgment brought by the City of Bisbee, a municipal corporation, through its mayor and common council, as plaintiffs, against the Arizona Tax Commission, the individual members comprising said Commission, and E. T. Williams in his capacity as the then treasurer of the State of Arizona, as defendants.

An interpretation of five or at the most six words found in what is commonly referred to as the Arizona privilege sales tax law was sought by the city. A judgment sustaining the city's viewpoint would have the effect of materially increasing its share of such tax. When the action was commenced, section 73–1322, A.C.A.1939, as amended, 1952 Cum.Supp., was in effect, and the controversial phrase therein was "the most recent United States census". In the enactment of the Arizona Revised Statutes of 1956 the legislature, in section 42–1341, substituted the word "federal" for the words "United States" thus making the controversial phrase read "the most recent federal census".

The city contends that the phrase quoted refers to any census taken under the auspices of the federal government, including but not limiting same to a federal decennial census, whereas the state treasurer contends that "the most recent federal census" means only a federal decennial census.

The case was tried to the court without a jury on an agreed statement of facts. The parties stipulated that the city was polled for purposes of the 1950 federal decennial census when its population was at an extremely low ebb, the mine which is its principal industry being then shut down and the military installation at nearby Fort Huachuca then being almost totally inoperative; since the taking of the 1950 census the mine and smelter have reopened and Fort Huachuca activated as a sizeable military installation, resulting in an increase in population entirely out of proportion to what might be considered a normal growth. It was agreed that if a special census of Bisbee were taken during 1955, when the action was filed, it would show the population of the city had materi-

ally increased since the last decennial census; that the taking of a special census by the Bureau of the Census, United States Department of Commerce, was authorized by the federal statutes; that the city proposed to cause such a census to be taken by that bureau at the city's expense, and, finally, that the Arizona tax commission and the state treasurer fully comply with the provisions of the privilege sales tax law with respect to the payment of ten percent of such revenues to the various municipalities of the State of Arizona.

Section 73–1322, A.C.A.1939, as amended, 1952 Cum.Supp., contains the following pertinent provisions:

"The state treasurer of the state of Arizona shall pay ten percent (10%) of the privilege tax collected under the Excise Revenue Act of 1935, or any amendment or modification thereof to the various municipalities of the state of Arizona in proportion to their population, as shown by *the most recent United States census,* to be used by said municipalities for any municipal purpose." (*Emphasis supplied.*)

This provision appears in the Arizona Revised Statutes of 1956 as a portion of section 42–1341 and is the same in substance.

As hereinabove indicated, it was and is the contention of the city that the census referred to in the law meant any federal census, either the decennial or the special, authorized by 13 U.S.C.A. § 8 (formerly section 218 this title); that the current census which the city proposed to have made thereunder is the one that should upon certification to him be used by the state treasurer in his payment to the city of its proportionate share of the funds available under said privilege sales tax law. The state treasurer, on the other hand, argues that only the most recent United States decennial census may be used as the basis for the apportionment among the several municipalities of the state; that if it were permissible to take such censuses piecemeal it is apparent that, as a matter of self-interest and self-protection, each and every municipality in the state would be required to cause a federal count of its inhabitants to be made each time another municipality chose to have one made in order to retain its just share of the tax.

The trial court carefully considered the stipulated facts in this case and through presentation of the applicable law, as submitted by the parties, and in a very well-reasoned memorandum opinion concluded the real meaning and purpose of the law is and was that on a given date and time a federal census should be taken of all the participating municipalities and on that basis a proportionate distribution of the funds available should be made. Its judgment therefore was in favor of the state treasurer's contention and against that of the city, and, after the overruling of motion for new trial, this appeal was taken.

There is but one assignment of error and that is that the trial court misinterpreted the law and that its judgment, therefore, is contrary to law. We agree.

■■ While the desirability of the utilization by the state treasurer of a fixed base, such as the most recent decennial census, in his allocations to the several municipalities of the state of their proportion of this tax is apparent, we cannot substitute our judgment for that of the people who adopted this initiated measure and say as a matter of law that the "most recent" census must mean the "most recent decennial" census. Had it been intended that only the decennial census be utilized, it would have been very easy for the framers of the legislation to have said so. Nor can we see that there is any distinction to be drawn between the use of the words "United States" as found in the 1952 code supplement and the word "federal" substituted therefor in the 1956 revised statutes. We hold that the expressions "United States census" and "federal census" as here used are synonymous.

So far as uniformity in apportionment is concerned, the city has incorporated in its closing brief much data as to population changes in a number of Arizona municipalities, and other evidence of departures from the 1950 United States decennial census which it says have been made by the state treasurer from year to year for the past six years, which have from time to time changed the percentage of the whole to which the several cities are entitled. Such, for example, as an increase in the population of Phoenix from 106,818 in 1950 to 142,972 in 1956, brought about by annexations, with an increase in its share of the sales tax from 34.738% of the whole in 1951 to 37.605% thereof in 1956. But as these statistics were not included in the agreed statement of facts, we consider only that portion of the alleged facts which show that since the 1950 census three new cities have been incorporated in Arizona which the state treasurer has recognized as being entitled to participate in distribution of the fund, it having been stipulated, as heretofore stated, that he had fully observed the requirements of the law in so doing. We hold the court might properly take judicial notice of the incorporation of new cities but it could not consider the additional factors set up in the brief. Of course, it becomes obvious that when additional cities are permitted to participate in the fund on the basis of their population as shown by the 1950 or any other federal census, the percentage of the participation of all other cities in the fund is necessarily affected thereby.

The word "census" comes from the Latin verb "censo", meaning "to count or to reckon". Most if not all of the states have statutes classifying cities and towns on the

basis of population; providing quotas for the issuance of licenses; creation of judicial districts, and the like, based on population. Population is usually determined as the result of a census and it is true in the United States when one speaks of "the census" the term has come to be understood as meaning the United States decennial census.

Historically, in the Roman language census meant "a numbering of the people". Webster says that census is "an official enumeration of the population of a country, or of a city or other administrative district." Judicially it has been defined as " * * * a finding of the population and not an estimate * * *." State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S.W. 591, 597.

In the case of State ex rel. Morrison v. Nabours, 79 Ariz. 240, 286 P.2d 752, 754, we were called upon to determine whether or not the legislature had the power to enact legislation arbitrarily fixing the population of a county for the purpose of authorizing additional judgeships when the constitutional provision whereunder same was adopted called for "a census enumeration". We said:

"The legislature can only authorize additional judges in the event a county has the requisite population measured by a census enumeration. This necessarily prohibits the legislature from making such determination by any other method."

The case of State ex rel. Morrison v. Thomas, 80 Ariz. 327, 297 P.2d 624, 628, involved an interpretation of our liquor licensing statutes, which set up a quota system for the issuance of certain types of licenses, based on population, and provides:

"The population of a county shall be deemed to be its population (as) last determined by the bureau of the census, less the number of Indian wards of the United States residing therein, as shown by such census."

This court in that case held that an enumeration such as there presented did not meet the requirements of our statute but did say that "nothing in this opinion should be construed to prohibit the use of figures resulting from the taking of a census by the Bureau of the Census at times other than every ten years."

The decision of the Ohio Supreme Court in State ex rel. Brubaker v. Brown, 163 Ohio St. 241, 126 N.E.2d 439, 441, raised an issue very similar to the one presented here. It appears therefrom that the Village of Kettering, Ohio, caused a special census of its inhabitants to be taken pursuant to the federal law hereinbefore cited. The purpose thereof was to determine whether or not the village had, in truth, a population

greater than 5,000. That fact, if established, would have advanced the community from the village class to the status of a city and municipal corporation. The census revealed a population in excess of 5,000 and the village requested the Secretary of State to issue a proclamation, as required by law, naming the village a municipal corporation. The secretary refused to do this and a mandamus proceeding was brought against him. The court stated the issue as follows:

"The question to be decided is whether an enumeration of the inhabitants of a village at a particular time, made by the Bureau of the Census of the United States Department of Commerce at the request of that village and pursuant to a contract between that village and the Department of Commerce, is included within the meaning of the words, 'any federal census,' * * *."

The court in discussing the federal statute, being the identical law relied upon by the city in the case now before us, held:

"Since this 'census' was taken by the federal government pursuant to federal laws authorizing its taking, it was obviously a 'federal census.' * * *"
The court cited In re Cleveland's Claim, 72 Okl. 279, 180 P. 852, 855, and City of

Compton v. Adams, 33 Cal.2d 596, 203 P.2d 745, 746.

Perhaps the most pertinent decision found to support our views in this case is that of City of Compton v. Adams, supra. That case concerns a special census taken in the City of Compton at its request and under the supervision of the United States Bureau of the Census. The census proved the city had a population in excess of 40,000, which fact in turn permitted the city to have established within it a municipal court. The court there said, "section 11 of article VI of the Constitution provides that such a court may be established in a chartered city 'containing a population of more than forty thousand inhabitants, *as ascertained by the last preceding census taken under the authority of the Congress of the United States'*." (Emphasis supplied.)

An ordinance was drawn and passed by the city council of the City of Compton to call for a special election on the subject of the municipal court. The treasurer of the City of Compton refused to pay costs for publishing the said ordinance. This case then came to court when the City of Compton and the local newspaper brought an action to compel the city treasurer to pay the costs of publishing the ordinance. The court stated the entire issue in a single sentence:

"The question presented is whether the 1948 census is 'the last preceding

census taken under the authority of the Congress of the United States' within the meaning of section 11 of article VI."

In determining the issue the court said:

"The requirement that the population of a City be ascertained by reference to a United States census was apparently adopted so that it could be definitely established, by reference to an official report, whether a city could establish a municipal court, and the 1948 census fulfills this purpose, since it was officially taken and the result was officially announced and certified by the Director of the Bureau.

"Section 11 of article VI does not require that the census taken under authority of Congress be the decennial census * * *."

The state treasurer has cited several cases and advanced a number of propositions of law in support of his contentions and it must be said there is some force to his arguments. However, a careful reading of such decisions and legal propositions convinces us they are either distinguishable or have no application here. For example, from the case of Sproul v. State ex rel. Smith, 153 Fla. 892, 16 So.2d 109, 110, it appears that a special census had been taken of two counties to ascertain the population for the purpose of determining whether that judicial circuit was entitled to an additional judge. After determining that the population was greater than that established at the last United States decennial census, an attempt was made to increase the tax on liquor licenses in accordance with the increased population. Florida law provides for a decennial state census and the liquor license tax was dependent upon the population "according to the latest state or federal census." F.S.A. § 561.34. The Florida court said that the legislature "had in mind the regular federal census which is taken every ten years." But it then went on to decide:

"It is conceded by counsel for both parties to this case that the two special acts adopted at the 1943 session of the legislature for the purpose of determining the population of Palm Beach and Broward counties and authorizing the appointment of an additional circuit judge were entirely sufficient to accomplish their purpose. But neither one of these special statutes had anything to do with taxation and the census taken in pursuance of one of them was not the kind of census which the legislature had in mind when it adopted the Beverage Act of 1935; * * *."

The judgment of the lower court is reversed with directions to enter judgment for the plaintiff, City of Bisbee, in accordance with the views expressed herein.

Judgment reversed with directions.

UDALL, C. J., and PHELPS, WINDES and STRUCKMEYER, JJ., concur.

JOHNSON, J., did not participate in the determination of this matter.

NOTE. The late Justice Arthur T. La Prade was ill when this case was orally argued, and Honorable Charles P. Elmer, Judge of the Superior Court of Mohave County, was called to sit in his stead.