STATE of Wyoming, on relation of the CITY OF CASPER, Natrona County, Wyoming, a municipal corporation, Appellant (Relator below),

v.

Charles B. MORGAN, State Treasurer, Appellee (Defendant below).

No. 2859.

Supreme Court of Wyoming

March 24, 1959

336 Pac.2d 791

2

Robert R. Rose, Jr., Arthur F. Fisher, Richard A. Tobin, Casper, for appellant.

Thomas O. Miller, Atty. Gen., and Ellen Crowley, Deputy Atty. Gen., for appellee.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

4

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by the City of Casper to have the gasoline license tax apportioned to cities and towns of this state apportioned to the City of Casper according to a special census taken of that city in 1957 instead of having the tax apportioned according to the population shown by the regular decennial federal census.

Section 32-2402, W.C.S.1945, provides for the levying of a gasoline license tax of four cents per gallon on all gasoline sold in the state. Part of this tax was

to be distributed to cities and towns of the state in accordance with § 32-2408, W.C.S.1945, which provided that:

"* * * From all other gasoline tax revenues provided by this Act, the [state] treasurer shall:

"* * * Apportion two [2] per cent of revenues secured from gasoline license tax between the several cities and towns of the State having a population of more than 1,500 in the ratio which the population of such city or town bears to the total population of all such cities and towns according *to the last available Federal census* * * *." (Emphasis supplied.)

Section 32-2408 was amended by Ch. 229, S. L. of Wyoming, 1957, but the provision with reference to the distribution of two cents per gallon above mentioned remained the same.

Section 2, Ch. 118, S. L. of Wyoming, 1951, provided for a special and additional gasoline license tax of one cent per gallon and § 3 of the Act provided:

"The revenue derived from the additional license tax provided for in this Act shall be distributed * * * twenty-five per cent (25%) to the cities and towns. * * * The twenty-five per cent (25%) due cities and towns under this Act shall be divided among the incorporated cities and towns of the State in ratio which the population of each city or town bears to the total population of all such cities and towns according *to the last available Federal census,* to be used in their street and alley program." (Emphasis supplied.)

According to the census of 1950, the population of the City of Casper was 23,673. A special census was asked to be taken by the City of Casper in 1957 and,

according to that census, the population of the City of Casper was 35,459. The city thereupon brought an action against the State Treasurer to compel him to distribute the gasoline license tax heretofore mentioned in the ratio which the population shown by the special census bore to the total population of cities and towns in the state limited as above mentioned. The trial court held against the contention of the City of Casper and from its judgment denying the city any relief it has taken appeal to this court.

In former days the State of Wyoming had enacted legislation for taking a state census midway between the decennial census taken by the federal government, but we have not had any state census for many years and the legislation on that subject was repealed by Ch. 11, S. L. of Wyoming, Spec.Sess., 1933. Hence we can readily agree with the statement of the Arizona court in the case of City of Bisbee v. Williams, 83 Ariz. 141, 317 P.2d 567, 569, as follows:

"* * * Population is usually determined as the result of a census and it is true in the United States when one speaks of 'the census' the term has come to be understood as meaning the United States decennial census."

If that is true, and we think it is, then that fact would seem to show reasonably clearly that the legislature, when it enacted the acts hereinbefore mentioned, did not have in mind any special censuses to be taken by any cities or towns in the state. We must further bear in mind that if it were permissible to take such censuses piecemeal it is apparent that as a matter of self-interest and self-protection each and every municipality in the state would be required to cause a federal count of its inhabitants to be made each time

another municipality chose to have one made in order to retain its just share of the gasoline license tax. This argument was made in the Arizona case above mentioned but was rejected by the court. However, it is readily seen that it does have considerable, if not controlling, effect in order to determine as to what was the intention of the legislature in making the provisions above mentioned.

Counsel for the appellant in this case cite us to State ex rel. Brubaker v. Brown, 163 Ohio St. 241, 126 N.E.2d 439; In re Cleveland's Claim, 72 Okl. 279, 180 P. 852; City of Compton v. Adams, 33 Cal. 2d 596, 203 P.2d 745, as sustaining the contention of the city herein. These cases all relate to the internal affairs of the respective cities or towns. In the California case, for instance, the question was whether or not a municipal court should be established after the city had attained a certain population in accordance with a special census. These cases have no bearing, or at least no controlling effect, herein. The legislative acts under consideration in this case have a statewide effect and do not relate to the mere internal affairs of a municipality.

The only case cited to us by the appellant that can in any manner be said to sustain the city's contention is the case of City of Bisbee v. Williams, supra. In that case the statutory provision was as follows:

"The state treasurer of the state of Arizona shall pay ten percent (10%) of the privilege tax collected under the Excise Revenue Act of 1935, or any amendment or modification thereof to the various municipalities of the state of Arizona in proportion to their population, as shown by the most recent United States census, to be used by

said municipalities for any municipal purpose."
§73-1322, A.C.A.1939, as amended, 1952 Cum.
Supp. [83 Ariz. 141, 317 P.2d 568]

In that case it was held that a special census taken
in 1956 was controlling in connection with the distri-
bution of the privilege tax mentioned above. It may
be noted that the legislative act provided that the cen-
sus that should control was one that could be used by
said municipality for any municipal purpose. In other
words, any census that could be used for any internal
purpose of a municipality would be the controlling
census in connection with the distribution of the privi-
lege tax. Hence, the legislative provision in Arizona
is quite different from the legislative provision in
this state. Furthermore, the court apparently was
influenced in its decision by the fact that the state
treasurer in distributing the tax had distributed part
of it to a number of cities that had been incorporated
in the state after the decennial census of 1950. We
have no such precedent as that in this state and we do
not think, accordingly, that we could follow the Ari-
zona case heretofore cited.

A conclusion contrary to that in the Arizona case
was reached in the case of Sproul v. State ex rel.
Smith, 153 Fla. 892, 16 So.2d 109, which involved
a provision applicable to the state as a whole. In the
case of Harp v. Abrahamson, 248 Iowa 222, 80 N.W.
2d 505, 506, syllabus 2 is as follows:

"Under statute requiring treasurer to apportion
among municipalities the 8 per cent road use tax
fund in ratio which population of municipalities
as shown by 'latest available federal census' bears
to the total population of municipalities, quoted
phrase means the general federal census taken in
1950 and not a special federal census taken in the
city in 1954. * * *"

The court stated in part as follows at 80 N.W.2d 507, 508:

"The legislature, in enacting Chapter 312, created a general fund to be administered among the various cities and towns of the state on an equitable basis, i. e., the population of the various cities and towns. By Section 312.3 (2) [I.C.A.] it provided, 'in the ratio which the population of each city or town, as shown by the latest available federal census, bears to the total population of all such cities and towns in the state.' Ratio, as defined by Webster's International Dictionary, means 'the quotient of one magnitude divided by another of the same kind.' Under appellants' theory one magnitude would be the population of the City of Newton, as established by the special federal census of 1954, divided by another magnitude which must be the population of all the cities and towns as established by the last certified census, i. e. that of 1950. This last certified census would also be the 'latest available federal census' so far as the total population of all cities and towns is concerned. Clearly such magnitudes are not of the same class. Under the same definition of ratio, using the last certified census as the magnitudes, there is an equality between the cities and towns based upon the same classification. * * *"

The case of City of St. Louis Park v. King, 246 Minn. 422, 75 N.W.2d 487, involved the question of the distribution of cigarette and liquor taxes and the question was whether or not the distribution should be made according to the last preceding census of the United States or a special federal census in 1954. The case contains an able discussion of the question involved in this case. The court said in part at 75 N.W.2d 493 as follows:

"* * * The function of the census is to determine the appropriate ratio, and it can only be useful

under these statutes when it provides the populations of each political subdivision determined *at the same time and for the same purpose,* which can be added together to determine the total population of the state. And unless the population of each political division is determined at the same time as the whole state population, a fair apportionment will not be made in accordance with the language of the statute. * * *" (Emphasis supplied.)

Again the court stated at 75 N.W.2d 495 as follows:

"We cannot assume that the population of other state units of government, nor that the total population of the state of Minnesota, would remain constant from April 1, 1950, to the present. Obviously, this assumption would be necessary to sustain plaintiff's contention. The increase in the share which the plaintiff would receive under the increased population shown by its special federal census would bring about a decrease in the proportional share of other state recipient units. If such an exception is now to be made, that is more properly a function of the legislature than of the courts. If there is in fact any inequity in the distribution of these taxes to the plaintiff by reason of its increased population and its resulting increased governmental responsibility, that is also a matter that the legislature, and not the courts, must rectify."

We see no objection to the census of 1957 having a controlling effect as to any internal affairs of the City of Casper, but we also think, particularly in accordance with the decisions in the Iowa and Minnesota cases above mentioned, that it can have no effect on the distribution of the gasoline taxes involved in the case at bar. We cannot encourage competition among the communities in this state in having a special census taken for the purpose of increasing their income from

the gasoline license tax to the detriment of other communities. The term "ratio" as used in the statute applies, we think, to the same denominator, namely, that the same census shall apply throughout. The judgment of the district court is affirmed.

Affirmed.