**STATE of Wyoming, ex rel. Steve STOCKER, individually, and as President of Albany County Licensed Beverage Association, and Albany County Licensed Beverage Association, the Tipple Inn Restaurant, Buckhorn Bar, Crown Drive-In Liquors, Alibi Drive-In Liquors, the Gallery, Laramie Lanes & Game Rooms, the Mini Dome Mall, the Overland—a Fine Eatery, Ranger Motel Lounge & Liquor Mart, Reeds Liquors, Old Settler's Saloon, Appellants (Plaintiffs),**

v.

**CITY OF LARAMIE, Mayor Peggy Deaver, Layne Kopischka, Sam Dunnick, Dave Charleville, Hugh McGinley, Don Nagel, Julie Chavez, Tim Collins, Bruce Johnson, in their official capacity; G & B, Inc., d/b/a North Town Super Market Liquors, Robert Blake and Gary P. Englemen; D & S, A Partnership, d/b/a Justin's; State of Wyoming Liquor Commission, State of Wyoming Department of Administration and Fiscal Control, Appellees (Defendants).**

No. 86–296.

Supreme Court of Wyoming.

May 29, 1987.

(defendants) State of Wyoming Liquor Com'n and State of Wyo. Dept. of Admin. and Fiscal Control.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Present licensees and the community dealership association contest the granting of two additional liquor licenses for new establishments which would compete with them in the Laramie, Wyoming market area, and now appeal from summary-judgment denial of their claims as presented by declaratory judgment, injunction, mandamus and prohibition. We affirm.

### ISSUES

Presented are two issues, (1) the enabling statute § 12–4–101(b), W.S.1977 (July, 1986 Pamphlet), providing for population adjustment of liquor license numbers on a state agency estimate is unconstitutional (improper standard), and (2) legislative delegation of population estimation to a state agency as the formula determinate for issuance of liquor licenses constitutes an unconstitutional delegation of legislative power to the executive branch of government (improper method).

Appellees raised a standing issue of a competitor's right to challenge issuance of additional licenses, which issue shall not be considered by virtue of the simplicity of this decision.

### LITIGANTS

Suit was filed by Steve Stocker,[1] individually and as President of the Albany County Licensed Beverage Association, the Association separately, and a number of licensed establishments in Laramie. Named as defendants as the issuing body were the City, Mayor and City Council (City); the State Liquor Commission, State of Wyoming Department of Administration and Fiscal Control (State); D & S, a partnership, d/b/a Justin's, Gary P. Englemen and Robert Blake; and G & B, Inc., d/b/a North Town Super Market Liquors (appli-

Jerome F. Statkus of Rooney, Bagley, Hickey, Evans & Statkus, Cheyenne, for appellants (plaintiffs).

Kathleen A. Hunt, City Atty., Laramie, for appellees (defendants) City of Laramie and Laramie City Council.

C.M. Aron of Aron and Hennig, Laramie, for appellees (defendants) Blake and Englemen.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Thomas C. Bogus, Sr. Asst. Atty. Gen., for appellees

---

1. He had been an unsuccessful applicant for a   new license through a controlled corporation.

cants). After motions for summary judgment were filed by both plaintiffs and defendants, together with supporting affidavits, the trial court determined that a justiciable controversy existed and plaintiffs had standing, and then granted summary judgment to defendants, dismissed plaintiffs' complaints with prejudice, and denied their motion for summary judgment, all of which validated the two new liquor licenses.[2]

## STATUTES

Wyoming has a state agency monopoly liquor distribution system (except beer) with a population-based private retail county and municipality licensing system.

"(a) Incorporated cities, towns and counties within Wyoming shall license and regulate or prohibit the retail sale of alcoholic and malt beverages under this title. Nothing in this title prohibits a licensing authority of an incorporated city, town or county from issuing less than the total number of allowable retail liquor licenses pursuant to W.S. 12–4–201 or from refusing to issue any license or permit authorized by this title.

"(b) Population figures are based upon the official ten (10) year federal census preceding the time of application. Population figures based upon the official census shall be periodically revised by a state population estimate no later than five (5) years after the federal census publication date.

"(c) Population figures and estimates required by subsection (b) of this section shall be furnished to the appropriate licensing authorities within the state by the department of administration and fiscal control. The maximum number of licenses and permits available for issuance by a licensing authority pursuant to the population formula provided by W.S. 12–4–201, shall be certified and distributed by the commission." Section 12–4–101(a), (b) and (c), W.S.1977 (July, 1986 Pamphlet).

**2.** It is at least suggested that population statistics in prior censuses were sufficient to justify one of the two licenses so that it is possible that

The constitutional challenge presented by appellants invokes the standard derived from the population-estimate adjustment of subsection (b) and the procedure for adjustment detailed to the Department of Administration and Fiscal Control (DAFC) by subsection (c). Appellants challenge subsection (b) on the basis of vagueness, ambiguity, indefiniteness, and uncertainty, and challenge subsection (c) as an unlawful delegation of legislative power to the executive. We are unpersuaded by the arguments made. Incidentally, no challenge was made to the accuracy or procedure used by DAFC to estimate population, but only to the delegation involved through use of the state agency data although statistical development and analysis constitute a general statutory function of its research and statistic division. See *Wyoming Population and Employment Forecast Report*, prepared by the Department of Administration and Fiscal Control (9th ed. 1986).

## ISSUE I—IMPROPER STANDARD

■ The principle is axiomatic and frequently enunciated that this court, when presented with a constitutionally based challenge to a statute, applies a strong presumption in favor of constitutionality. *Bell v. State*, Wyo., 693 P.2d 769 (1985); *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778 (1982); *Meyer v. Kendig*, Wyo., 641 P.2d 1235 (1982). For a similar authority, see *State v. Hoffman*, Utah, 733 P.2d 502 (1987). In application of this standard, we do not find the revision factor of § 12–4–101(b) to be unconstitutional in creating the adjustment process to authorize issuance of liquor licenses. We are not persuaded that the legislature is constrained to federal censuses if it selects population as the basis of the community eligibility to issue liquor licenses. Much of the activity of the academic and industrial society is founded on estimates, and the pure logician might question whether many "facts" are empirically

only one of the licenses, not separately defined, was really at issue in the litigation.

exact.[3] Certainly population determinations, however designated, are factored with some degree of estimation.

We would find that the meaning of "estimate" as defined by Webster's Ninth New Collegiate Dictionary (1986), as "a numerical value obtained from a statistical sample and assigned to a population parameter" is sufficient to constitutionally set a standard for the number of emporiums to be authorized to merchandise alcoholic beverages under the purview of Title 12 of the Wyoming statutes. The word "estimate," although encompassing an opinion formed as to number or amount from imperfect data, has been held to be not an ambiguous term. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* Mo., 491 S.W.2d 261, 266 (1973); *State ex rel. Reynolds v. Jost,* 265 Mo. 51, 175 S.W. 591 (1915). Its ordinary, generally understood meaning can be easily applied. 2A Sutherland Statutory Construction § 47.28 at 223 (1984 ed.). In another context involving valuation, this court has held that appraisal and estimate are terms used interchangeably. *State Highway Commission v. Black,* Wyo., 417 P.2d 750 (1966). The word "estimate," as defined to mean fixing the worth, value, size, extent or number, is a designation of a process if a verb, or a result if a noun, and its accuracy is defined by the character of its maker. The estimates of light-year distance to faraway constellations can be compared with the estimate of the gallons of water in the Pacific Ocean. Each, if relevant, would be appropriate for use by the executive and judicial branches of government. Appellant would seek to constrain legislative choice in the enumeration as indigenous to the Roman *censere,* instead of the population-estimate process statutorily provided for liquor-licensing purposes. We do not choose to limit legislative discretion in that fashion. See *Kopp v. State,* 100 Idaho 160, 595 P.2d 309 (1979). Compare the more limited criteria in *City of Bisbee v. Williams,* 83 Ariz. 141, 317 P.2d 567 (1957); *State ex rel. Morrison v. Nabours,* 79 Ariz. 240, 286 P.2d 752 (1955); *Sproul v. State ex rel. Smith,* 153 Fla. 892, 16 So.2d 109

(1944); *Union Electric Co. v. Cuivre River Electric Co-Op., Inc.,* Mo.App., 571 S.W.2d 790 (1978); and *State ex rel. Brubaker v. Brown,* 163 Ohio 241, 126 N.E.2d 439 (1955), where the specified census or federal agency processes may be required by statute. The historical difference is between listing, counting, or present Wyoming law which relies upon a state-agency estimate. We hold that the legislature can use any rational process chosen as a basis to authorize population-determined liquor-license eligibility of municipalities and counties.

## ISSUE II—IMPROPER METHOD

The second subject addressed by appellants is not the accuracy of DAFC's information, but rather the propriety of legislative delegation of population estimation. It should be understood that the statistical function assignment to DAFC is not one solely related to liquor-license eligibility, but rather a generalized function which could affect a number of governmental activities.

The authorization statute which established the division states:

"(a) The department through the division of research and statistics, in cooperation with other governmental and private agencies, shall:

"(i) Assist state agencies in developing statistical and informational management programs by collecting, compiling, analyzing and distributing information and statistics when the information is readily available from other agencies, and eliminate the duplication of collection, compilation and distribution of information or data prepared by agencies;

"(ii) Act as overall supervisory and coordinating authority for statistical, informational or research programs conducted by or on behalf of agencies;

"(iii) Conduct statistical research and studies on its own authority or as requested by other governmental bodies;

"(iv) Establish uniform criteria for collecting, distributing, compiling, reporting

---

3. The word "estimate" or its derivation is found 284 times in Wyoming statutes.

and analyzing statistical and other information generated by agencies;

"(v) Establish and maintain a central depository of statistical and other data relative to the operation of state government for the economic and environmental life of this state;

"(vi) Consolidate into digest form information and reports which lend themselves to compilation; * * * " Section 9–2–1024, W.S.1977.

█ Obviously, the membership of the legislature or its committees are not going to count the number of inhabitants of cities and towns, nor would such activity accord with the legislative function as distinguished from executive responsibility. This court will not conclude that the legislative decision to use an established state agency for a number-determinative decision is a violation of the separation of powers. DAFC has been performing this function in the determination of allowable liquor licenses since May 25, 1979, the effective date of Ch. 156, Section 5, S.L. of Wyoming 1979. The function has been provided by the division of research and statistics since DAFC and the division were created in 1971 by Ch. 203, S.L. of Wyoming 1971. The history of the division, through its 16–year period of existence, comes to this court with a level of expertise which has not previously been called into question.

In a foundational case on state authority and administrative delegation, the Missouri Supreme Court said almost 60 years ago:

"The rule is without exception that the legislative power vested in the lawmaking body of the state cannot be delegated. Yet, under modern conditions, in the many ramifications of modern life in which affairs are brought under legislative regulation, the necessity of conferring upon administrative bodies and officers the authority to ascertain facts, or perform conditions, under which a law may be brought into effect, are so numerous and varied that the difficulty is not in announcing the principle that legislative power may not be delegated, but in the application of the rule to specific cases." *State ex rel. Carpenter v. City of St. Louis,* 318 Mo. 870, 2 S.W.2d 713, 725 (1928).

See also *Ex Parte Bakelite Corporation,* 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed.2d 789 (1929).

We adopt the cogent critique of the trial court in its review and decision upon which the summary judgment was entered.

"As provided in W.S. 9–2–1024(iv) (1977), DAFC, through the division of research and statistics, must 'Establish uniform criteria for collecting, distributing, compiling, reporting and analyzing statistical and other information generated by agencies.' In 1973 the Wyoming Supreme Court cited the decision from *State v. Birmingham,* 95 Ariz. 310, 390 P.2d 103 at 105 and held that to avoid an unconstitutional delegation of power, administrative officials need not be supplied with 'a specific formula for their guidance in a field where flexibility and policy adaptation to infinitely variable conditions constitute the essence of the program.' Furthermore, the Legislature's standards may be in 'broad and general terms.' *Spiegelberg v. Wyoming Highway Department,* 508 P.2d 18, 21 (1973). Although W.S. Section 9–2–1024 (1977) is broad and general, it does provide sufficient guidelines so that DAFC may complete its task of making 'estimates.' "

Affirmed.