320 P.2d 689

The VALLEY NATIONAL BANK OF PHOENIX, a national banking association, Appellant,

v.

The FIRST NATIONAL BANK OF HOLBROOK, a national banking association, Appellee.

No. 6442.

Supreme Court of Arizona.

Jan. 21, 1958.

288

Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, for appellant.

Axline & Shelley, Holbrook, for appellee.

JOHNSON, Justice.

This is an appeal from a judgment entered in a declaratory judgment action holding Chapter 119 of the Laws of 1956, providing for the deposit of public monies, is void and unconstitutional, and permanently enjoining and restraining the members of the board of supervisors and the treasurer of Navajo County from acting under or pursuant to said law.

The First National Bank of Holbrook, hereinafter called appellee, filed suit seeking a declaratory judgment against Navajo County, the members of the board of supervisors and the county treasurer, declaring Chapter 119 of the Laws of 1956 void and unconstitutional. The Valley National Bank of Phoenix, hereinafter called appellant, was permitted to intervene upon the ground it had an interest which would be affected by the judgment and at the same time filed an answer admitting there was a justiciable controversy. Thereafter, it amended its answer denying a justiciable controversy existed and moved to dismiss the complaint upon the grounds that the complaint failed to state a claim upon which relief could be granted and for failure to join as defendants indispensable parties to the action, to-wit, the State of Arizona, the state treasurer, the attorney general and the board of deposit of the State of Arizona, as defined by A.R.S. § 35–321. The trial court denied the motion to dis-miss and entered judgment in favor of appellee, holding the act unconstitutional.

In order to have a complete understanding of the issues involved it is necessary to set forth a brief analysis of Chapter 119, now found in section 35–321 et seq., A.R.S.

Chapter 119, supra, deals with the deposit of public monies of the State of Arizona, counties and municipalities. The statute amended section 10–302 of the 1939 Code. Under the 1939 Code the specified custodians of public money were given authority to deposit the same in banks which had qualified as public depositories by securing deposits of public money with securities as provided by section 10–303 of the 1939 Code. That law permitted the authorized officers to designate active and inactive depositories, but no interest was paid on such deposits by any depository. The amount to be deposited in any depository was entirely within the discretion of the various designated officials.

Chapter 119, supra, retained the basic requirements that depositories must secure the deposits of public monies with the same identical securities as under the previous law, but sought to accomplish two major changes in the method of handling public monies. The principal objective was to obtain the payment of interest on portions of the public funds and this was done by providing that the authorities charged with handling the funds classify same into ac-

tive and inactive deposits, to the end that the inactive deposits would contain monies not currently needed for operations of the state or political subdivisions, and that those inactive funds could be treated much the same as savings accounts, and would draw interest from the various depositories.

The second major change was to eliminate the discretion of the public officials in placing the public funds in various banks, and to provide a mathematical formula by which the money should be allocated among all of the banks qualifying as public depositories.

The statute designates a board of deposit of state funds, a board of deposit in each county for county funds, and a board of deposit in each city or town for these funds. The state board of deposit consists of the state treasurer, the governor and the state auditor, and the board of supervisors and the board of trustees or the common council are designated as the board of deposit for the county or city funds. Any national bank with its principal place of business in Arizona, and any commercial bank or savings bank carrying federal deposit insurance, is eligible as a public depository, except that savings banks may not become a depository for active deposits. The branch offices of parent banks are on an equal basis with eligible banks in a county having no branches.

The law provides that the board of deposit shall designate the public monies which shall be available for deposit as active deposits and as inactive deposits, and notify all banks eligible to receive such funds, and such banks are required to apply for such active and inactive funds as they desire to carry, with a statement certifying to amount of qualifying deposits; thereafter, awards are made by the board of deposit.

With regard to state money, if the applications for inactive funds shall exceed the total available for deposit, then the board of deposit shall first allocate one million dollars to each eligible depository, and the balance of inactive funds shall thereupon be allocated among the eligible depositories in the proportions that the capital structure of each bears to the aggregate capital structure of all. The active funds of state monies are all apportioned on the basis of the capital structure of the respective banks.

All banks within the state are eligible to qualify as depositories for state funds; all banks within a county are eligible to qualify as depositories of funds in that county; and all banks within a town or municipality are eligible to qualify as depositories of funds of such town or municipality.

Where the applications for county or city funds exceed the total inactive or active funds, an apportionment is then made among the eligible depositories in the proportion that the deposits of each bears to the total deposits of all.

The statute further provides that inactive public deposits shall be evidenced by certificates of deposit having a maturity of six months from the date of issue. The statute does not provide for the payment of interest at a fixed per cent per annum on inactive funds. However, the statute has adopted a formula which provides that the basic calculation of interest on such deposits shall be the highest permissible rate of interest, to be established by the board of deposit, but shall not exceed fifty per cent of the average yield before taxes of United States treasury bills for the three months next preceding the issue or renewal of a certificate of deposit. The interest is payable on maturity of the certificate of deposit, and the highest permissible rate of interest as defined by the statute is a rate of interest which no class of eligible banks is prohibited from paying by state or federal laws or valid regulations.

On May 14, 1956, the board of supervisors of Navajo County, acting as a board of deposit, declared $400,000 of county funds to be inactive and $500,000 of county funds to be active. The appellant and the appellee, as the two banks doing business in Navajo County, thereafter applied for such funds and designated their qualifying deposits in Navajo County.

Appellant moved in the trial court and contends before us that the complaint fails to state a claim upon which relief could be granted in that no justiciable controversy exists. Pursuant to the statute in question the board of supervisors of Navajo County, acting as a board of deposit, declared certain funds of the county to be active and inactive funds. Thereafter, appellee applied for such funds and designated its qualifying deposits in Navajo County, although at the time the instant suit was filed the board of supervisors of Navajo County had made no award of active or inactive funds to either appellee or appellant. It is reasonable to assume that as a matter of course the officials of said county would deposit such county funds with appellee as being a qualified depository within the county, which would thereupon create as a matter of law rights, status or legal relations which are affected by the statute in question. A.R.S. § 35–325.07 provides, inter alia, that the board of deposit of each subdivision shall award the inactive deposits to the eligible depositories. Appellee had qualified as such and all that remained to be done was a perfunctory act of the board of supervisors. This court in several opinions has defined what does and does not constitute a justiciable controversy in particular situations. We set forth the test in Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758, 761:

"The question in a suit under the declaratory judgment act must be real and not merely theoretical. The proponent must have an actual or real interest in the matter for determination,

and the opponent must have a real interest in opposing the declaration sought. In other words, there must be an actual controversy. Morton v. Pacific Const. Co., 36 Ariz. 97, 283 P. 281; Kleck v. Wayland, 53 Ariz. 432, 90 P.2d 179; Hammond v. A. J. Bayless Markets, 58 Ariz. 58, 117 P.2d 490. The act is remedial and is to be liberally construed and administered. Taylor v. McSwain, 54 Ariz. 295, 95 P.2d 415; Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P.2d 205. * * *"

We hold under the circumstances in this case that appellee's suit for a declaratory judgment pursuant to A.R.S. § 12–1832 presents a real and not merely a theoretical question as to its rights, status and legal relationship in connection with county funds which are about to be deposited with it.

Appellant next contends the trial court erred in declaring and finding Chapter 119 of the Laws of 1956 to be void and unconstitutional, and particularly the provision thereof which provides inactive public deposits shall be evidenced by certificates of deposit having a maturity of six months from the date of issue, which certificate, however, shall provide on its face that the amount of such deposit is payable nevertheless before maturity on written notice to be given thirty days before the date of repayment, is in conflict with the provisions of

Section 7, Article 9 of the Constitution of Arizona, A.R.S., which reads as follows:

"Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the State by operation or provision of law."

The authorities generally sustain the proposition that demand deposits or those which are subject to withdrawal at will, made in good faith, by authority of law, for the convenience of the state or a subdivision thereof and as an economical safe way of preserving the safety of its funds, is not violative of a constitutional inhibition of lending public credit, even though the bank agrees to pay interest on daily balances. Limestone County v. Montgomery, 226 Ala. 266, 146 So. 607, 609, 87 A.L.R. 164; 26A C.J.S. Depositaries § 7, p. 218.

In the Limestone case the court, in considering such constitutional provisions, stated:

"* * * It is said that the test of the constitutionality of a statute requiring

the use of public funds, is whether the statute is designed to promote public interests as opposed to furthering the advantage of individuals (citing numerous authorities), and that it is intended by such provision to withhold all power and function of suretyship (citing authority).

"* * * The test is whether it is done in good faith for the convenience and safety of the operations of the county. A loan would, we think, be included in the prohibition. But the fact that the bank pays interest on a deposit does not reflect upon its character as such. * * *"

To the same effect in Bannock County v. Citizens' Bank & Trust Co., 53 Idaho 159, 22 P.2d 674, 680, the court in considering the question of the constitutionality of the Idaho Public Depository Law and whether the depositing of public funds in banks thereunder constituted a loan of credit in violation of the constitutional provision, which is identical to our own, stated:

"* * * The people took their money to the banks to *deposit* it, and the banks accepted the money as *deposits,* and not as *loans*. It is doubtful if any one ever took money to a bank for *deposit* under the impression that the transaction was to constitute a 'loan,' in the popular sense of that word. At the time of the adoption of the Constitution, the word 'loan' meant, as it has always meant, a transaction which created the customary relation of lender and borrower. Those transactions were occurring every day as were those involving the depositing of money. The people fully understood the difference between making a 'deposit' in a bank, and obtaining a 'loan,' because if they had not they would not have been able to do either.

"In interpreting the sections of the Constitution in question, the language employed must be taken and understood in its natural, ordinary, general, and popular sense. * * * The rule is that before a legislative enactment will be held to be unconstitutional, it must clearly appear to be so, and, if there be any doubt as to the constitutionality of an act, it must be resolved in favor of the act."

Appellee urges, however, that time deposits constitute a loan of credit and cite the following cases: United States v. Pennsylvania Trust Co., D.C., 47 F.Supp. 804; Moon Motor Car Co. of St. Louis, Mo. v. State, 149 Okl. 190, 1 P.2d 358; City of Aberdeen v. National Surety Co., 151 Wash. 55, 275 P. 62, 65 A.L.R. 794; Limestone County v. Montgomery, supra; First American Bank & Trust Co. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A.L.R. at page 1399.

We agree that the foregoing cases recognize the general rule of law that

a deposit is for the benefit of the depositor and a loan is for the benefit of the borrower; that it is also true that a deposit may also benefit a depositary but such is not the primary object of the transaction. The essential distinction between a deposit and a loan of public funds hinges on the right to demand the return of the money. If the money must remain for a fixed period there is a loan in the strict legal sense and not a deposit in the sense the term is ordinarily used.

■ In construing Section 7, Article 9, of the Constitution, the language employed must be taken and understood in its natural, ordinary, general and popular sense; and before a legislative enactment will be held to be unconstitutional it must clearly appear to be so, and any doubt as to the constitutionality of an act must be resolved in favor of the act.

In the case of Day v. Buckeye Water Conservation and Drainage Dist., 28 Ariz. 466, 237 P. 636, 638, we had occasion to refer to the historical origin of the Montana constitutional provision, which is almost identical to ours, in connection with its application to the purchase by an irrigation district of shares of stock in private water companies.

" 'It represents the reaction of public opinion to the orgies of extravagant dissipation of public funds by counties, townships, cities, and towns in aid of the construction of railways, canals, and other like undertakings during the half century preceding 1880, and it was designed primarily to prevent the use of public funds raised by general taxation in aid of enterprises apparently devoted to quasi public purposes, but actually engaged in private business. Although an irrigation district is authorized to levy taxes upon the lands included in the district for the purpose of raising funds to discharge any indebtedness incurred in purchasing or constructing an irrigating system and in maintaining such system, the taxes so imposed are in the nature of special assessments, as distinguished from general taxes. * * *' " (Thaanum v. Bynum Irr. Dist., 72 Mont. 221, 232 P. 528)

Undoubtedly, the framers of our Constitution were aware of the extravagant dissipation of public funds in other states and wisely provided against it.

"It is settled by very high authority that in placing a construction on a Constitution or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the Constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy. * * *" 11 Am.Jur., Constitutional Law, Section 63, page 676.

We are, however, urged to affirm a holding of the unconstitutionality of the statute for the reason that in a strict legal sense a deposit of public funds for a fixed period of time constitutes a loan and indirectly aids and benefits the depositary. We think this requires a consideration of the motivating and animating cause of the transaction authorized by the statute as well as the object that it is designed to accomplish.

In Almond v. Day, 197 Va. 782, 91 S.E.2d 660, 667, the Supreme Court of Virginia, in considering whether the Supplementary Retirement System statute which provided for the investment of state funds was prohibited by a constitutional clause (similar to Arizona Constitution), restricting the lending of credit for the investment of such funds in the stock of corporations, stated:

"Use of the State's funds for purchase of securities for the State's benefit is not an extension of 'credit' which poses any threat to the financial security or welfare of the State. Extending its credit to aid and promote private enterprise was the evil from which the State had suffered financially. The potential danger incurred in lending credit to foster and promote the interests of those who had no rightful claim, in justice or in morals, to the State's help or relief was the evil to be arrested. When the underlying and activating purpose of the transaction and the financial obligation incurred are for the State's benefit, there is no lending of its credit though it may have expended its funds or incurred an obligation that benefits another. Merely because the State incurs an indebtedness or expends its funds for its benefit and others may incidentally profit thereby does not bring the transaction within the letter or the spirit of the 'credit clause' prohibition.

\*    \*    \*    \*    \*    \*

"The historical background of this provision and the qualifying phrase added in 1902 make it abundantly clear that the purpose of the transaction is the vital and controlling factor by which its validity or invalidity shall be determined. When the purchase of corporate securities, i. e., bonds, stock or other obligations of a company is made with State funds which are being invested in the ordinary course of business for the State's benefit, and the transaction is not activated or made with the purpose of aiding in the construction or maintenance of the works of a company, such purchase is not forbidden by § 185. \*    \*    \* "

We think the legislature wisely and safely provided for deposit of inactive funds in such a manner that will afford the state and its subdivisions, when the need or necessity arises, the right to with-

draw such funds. Under the provisions of the statute which we are considering the state or political subdivisions may withdraw active funds deposited on demand. The inactive funds are left with the bank upon certificates of deposit payable in six months, but with express provision that any part or all of the same may be withdrawn upon thirty days' notice at any time prior to the six-month maturity date. In addition to these two provisions a board of deposit would have the power to demand the immediate withdrawal of inactive funds if it was confronted with an emergency, as is provided in Section 4(d) of Regulations of the Federal Reserve Board. We hold that an award of public monies to a bank under the provisions of Chapter 119 is not a transaction prohibited by the extension of credit inhibition contained in Section 7, Article 9, of the Constitution of the State of Arizona.

We find no merit to the contention that indispensable parties were not made defendants, namely, the State of Arizona and other state officials, as the record shows that the attorney general entered an appearance and accepted service of summons and complaint. This constituted full compliance with Section 12–1841, A.R.S.

As an additional ground for holding the statute in question unconstitutional, the trial court found that the method provided for determining interest to be paid as indefinite and uncertain. A.R.S. § 35–325.19 establishes the rate of interest to be paid on inactive deposits as "* * * the highest permissible rate of interest, which rate, to be established by the board of deposit, shall not exceed fifty per cent of the average yield before taxes of United States treasury bills for the three months next preceding the issue or renewal of a certificate of deposit. * * *" These figures are always available and can be obtained promptly from the U. S. Treasury. They are not indefinite and uncertain and are readily ascertainable. Nor do we think the method of determining the rate of interest is a delegation of authority to a federal agency as it is merely a formula or standard to be used by the boards of deposit and have a definite and fixed basis in connection with the rate of interest to be paid, and under such circumstances Chapter 119 cannot be construed as a delegation of the legislative power of the state. Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292, and cases cited.

We do not agree with the conclusion of the trial court that Chapter 119 was unconstitutional based upon the ground that it constituted a restraint of trade in that it attempts to restrict free business intercourse between the banks of the state, counties and cities. The legislature has always exercised, and rightly so, the power to provide for the handling and safekeeping of public revenue. It is certainly

within legislative competence to provide some reasonable and uniform formula for distribution of public funds among eligible depositories. Certainly a statute requiring the deposit of public funds based upon the respective capital structures of the qualifying depositories is both equitable and proper in considering the important safety factor. While it appears that one of the chief purposes of Chapter 119 is profit to the state or subdivisions by way of interest on the funds deposited, this is by no means the only consideration. The important element of safekeeping cannot be ignored. Where the legislature enacts a statute designed to protect and regulate the deposit of public funds, basing the qualification for state funds upon the proportion the capital structure of each qualified depository bears to the capital structure of all and as to each subdivision in proportion as the aggregate qualifying deposit of all such qualifying offices of the applicant banks, we believe a reasonable foundation for the classification is made and the statute is not arbitrary or discriminatory. Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604; Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764.

We therefore hold that Chapter 119, Laws of 1956 (A.R.S. Title 35, Chapter 2, Article 2) is constitutional and valid.

Judgment reversed.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.