633 P.2d 404

**AMERICAN BUS LINES, INC., a Delaware corporation, dba Trailways, Petitioner,**

v.

**The ARIZONA CORPORATION COMMISSION; Bud Tims, Jim Weeks and Diane McCarthy, commissioners thereof, Respondents.**

No. 15527.

Supreme Court of Arizona, En Banc.

July 27, 1981.

Rehearing Denied Sept. 10, 1981.

Hungerford, Heilman & Ventre by Joseph .B. Heilman, Scottsdale, for petitioner.

Robert K. Corbin, Atty. Gen. by Lynwood J. Evans and James C. Hair, Asst. Attys. Gen., Phoenix, for respondents.

Yankee, Bernstein & Lutich by Thomas W. McLellan, Phoenix, for amici curiae Arizona Express, Inc., C.T.I. and Reliance Truck Co.

Shimmel, Hill, Bishop & Gruender by Lewis P. Ames, Phoenix, for amicus curiae, Arizona Motors Transport Ass'n.

HAYS, Justice.

A petition for special action was filed by American Bus Lines, Inc., a Delaware corporation, doing business in Arizona as Trailways, seeking relief from the actions of the Arizona Corporation Commission in continuing to regulate corporations carrying persons or property for hire. We accepted jurisdiction of the petition for special action, as it was apparent that this was a

matter of statewide concern requiring early resolution. Motions to file amicus curiae briefs were filed by other trucking companies and by the transport association. These motions were granted.

In April of 1979 the Arizona Legislature adopted Senate Concurrent Resolution No. 1015, a referendum proposition to be voted on by the people of Arizona in the November 1980 election which proposed amendments to article 15, sections 2 and 10, Arizona Constitution. These amendments purported to remove from the Corporation Commission the power to regulate buses, taxicabs, trucking and moving companies, and airlines operating within the state.

Legislation was enacted by the legislature conditioned on the passage of the constitutional amendment which transferred the responsibility for regulation of the safety operations of motor carriers from the Corporation Commission to the Department of Transportation. This legislation was to go into effect July 1, 1982.

The constitutional amendment was approved by the voters and was proclaimed by the governor to be law on November 24, 1980. The petitioner asserts that despite the foregoing, the Corporation Commission continues to regulate motor carriers, and that the Commission can no longer limit the petitioners' activities and routes to those authorized under previous certificates of convenience and necessity.

The respondent Commission urges that although the constitutional amendment became law on November 24, 1980, it will not become operative until July 1, 1982. There is little question that all parties actually contemplated that the effective date of deregulation of carriers was to be July 1, 1982. The implementing legislation bears an effective date of July 1, 1982. The 1980 Publicity Pamphlet explaining the constitutional amendment indicated that if the amendment passed, it would be effective July 1, 1982. A wide range of news articles, editorials and the like emphasized to the voters the fact that deregulation would not come about immediately but would allow time for adjustments to the new approach.

The petitioner, however, points out that the ballot contains no reference to an operative date, or date the amendment is to go into effect. Further, says petitioner, since there is no contrary indication, the operative date and the date it became law by proclamation are one and the same. There is no ambiguity in the information on the ballot; hence, under proper rules of construction, no resort may be had to outside sources, such as the Publicity Pamphlet, supporting legislation or the news media. *Adams v. Bolin*, 74 Ariz. 269, 247 P.2d 617 (1952).

Petitioner concedes that an amendment to the constitution can become law on the day it is proclaimed and yet by its terms not become operative until some later date. *State ex rel. Jones v. Lockhart*, 76 Ariz. 390, 265 P.2d 447 (1953). It further admits that if there is an ambiguity which requires construction, the courts can use the Publicity Pamphlet to assist in this determination. *Ward v. Stevens*, 86 Ariz. 222, 344 P.2d 491 (1959). But, petitioner insists, there is no ambiguity here which demands construction.

Following is the ballot format of the proposed amendment as presented to the voters:

BALLOT FORMAT

---

### PROPOSITION 101

### PROPOSED AMENDMENT TO THE CONSTITUTION BY THE LEGISLATURE

OFFICIAL TITLE

SENATE CONCURRENT RESOLUTION 1015
A CONCURRENT RESOLUTION PROPOSING AMENDMENTS TO THE CONSTITUTION OF ARIZONA RELATING TO PUBLIC SERVICE CORPORATIONS AND RAILROADS; DECLARING ALL RAILROADS TO BE COMMON CARRIERS AND SUBJECT TO CONTROL BY LAW, AND AMENDING ARTICLE XV, SECTIONS 2 AND 10, CONSTITUTION OF ARIZONA.

---

DESCRIPTIVE TITLE

Amending Arizona Constitution, Article XV, Sections 2 and 10 changing definition of public service corporations and declaring all railroads to be common carriers and subject to control by the Corporation Commission and excluding from regulation by the Corporation Commission, buses, taxicabs, ambulances, touring companies, trucking and moving companies, and airlines operating within the state and placing such companies under jurisdiction of the State Department of Transportation.

---

PROPOSITION 101

| | | |
|---|---|---|
| A "yes" vote shall have the effect of deregulating the transportation industry. | YES | → |
| A "no" vote shall have the effect of not deregulating the transportation industry. | NO | → |

---

The Commission has referred us to *Ward v. Stevens*, 86 Ariz. 222, 344 P.2d 491 (1959), quoting therefrom as follows:

"It has been held that when a constitutional provision is clear on its face and is logically capable of only one interpretation, no extrinsic matter may be shown in support of a construction which would vary its apparent meaning, *Adams v. Bolin*, 74 Ariz. 269, 247 P.2d 617, 33 A.L.R.2d 1102. However, when, as in this case, the constitutional language is ambiguous, or when a construction is urged which would result in an absurd situation, the court may look behind the bare words of the provision in order to determine the conditions which gave rise to it and the effect which it was intended to have. (Citations omitted)." *Id.* at 28–29, 344 P.2d at 495.

As we examine the ballot (set out supra), nothing therein readily cries out for construction or interpretation. The final phrase in the "descriptive title" gives us pause, however. It reads "and placing such companies under jurisdiction of the State Department of Transportation." All par-

ties concede that the enabling legislation which gives this jurisdiction to the Department of Transportation does not go into effect until July 1, 1982. Doesn't this indicate an ambiguity?

We noted with some interest that at the time of the oral argument on the special action petition, the petitioner suddenly changed its position and along with the Commission embraced the idea that police power to regulate carriers could be granted to the Commission by the legislature. This court is compelled by the language of *Rural/Metro Corp. v. Arizona Corporation Comm'n,* 129 Ariz. 116, 629 P.2d 83 (1981) to hold that unless there is a constitutional grant of power over carriers, the legislature cannot grant to the Commission additional control over carriers as an exercise of police power or otherwise. With this holding we see that an absurdity results. The carriers of this state would be answerable to no one for safety or otherwise. Not only would the result be absurd, it would place the safety of the citizens of Arizona in jeopardy. The list of horribles could be enumerated endlessly to the extent of any fertile imagination of mankind. Suffice it to say, the most apparent illustrations are appalling.

For all of the foregoing reasons, we hold that the subject constitutional amendments, although valid, are not operative or in effect until July 1, 1982.

We have indicated in a previous paragraph that *Rural/Metro, supra,* is dispositive of the question of whether the Commission can exercise jurisdiction over safety regulations applying to motor carriers. We said in that case:

"Specifically, this court has stated that such powers as the Commission may exercise do not exceed those to be derived from a strict construction of the constitution and *implementing* statutes. . . .

"It is significant that 'statutes' is qualified by the term 'implementing.' This qualification would suggest that the legislature may only enact statutes conferring powers upon the Commission which give practical effect to and ensure the actual fulfillment of the pertinent constitutional provisions governing the authority of the Commission. . . ." 129 Ariz. at 117, 629 P.2d at 84 (1981).

The holding in *Rural/Metro, supra,* was of necessity limited to the narrow issue presented. In the posture of this case we now hold that the Commission may exercise the powers granted by the legislature under the implementing statutes, including safety and police powers.

Supported by the authorities and reasoning of *Rural/Metro,* we further hold that on July 1, 1982, when the constitutional amendments become operative and effective and carriers lose their status as public service corporations, the Commission no longer has jurisdiction to regulate or control carriers, as a matter of police power or otherwise.

Prayer for relief denied.

STRUCKMEYER, C. J., and CAMERON and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice (dissenting):

In an attempt to reach a desirable result, I believe that the court has misapplied the principles applicable to statutory and constitutional construction and I, therefore, must note my dissent.

I agree with the court that a constitutional provision, clear on its face, may not be varied by resorting to extrinsic matters, and that extrinsic matters may be resorted to only when the constitutional language is ambiguous or when the construction urged would result in an absurd situation. *Ward v. Stevens, supra.* I part company with the majority in its application of those principles.

The majority finds that the Descriptive Title on the ballot for the amendment at issue contains the reference that transportation companies will be placed under the jurisdiction of the State Department of Transportation. There is no such mention of the Department of Transportation in the text of the constitutional amendment, so

the majority concludes that there is an ambiguity. From the ambiguity the majority concludes that the constitutional amendment was not to become effective until July 1, 1982.

The leap from a reference to the Department of Transportation to the conclusion that the effective date of the Amendment was somehow affected leaves a chasm of logic which I am unable to leap.

The majority operates on the false premise that the 1980 Publicity Pamphlet issued by the Secretary of the State for the 1980 General Election "indicated that if the amendment passed, it would be effective July 1, 1982." This position is demonstratively incorrect.

The Publicity Pamphlet for the 1980 General Election contained the text of the proposed amendment, and the first paragraph stated:

"1. The following amendments of article XV, sections 2 and 10, Constitution of Arizona, are proposed, *to become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the governor*:" (emphasis supplied).

Following the above, the full text of the proposed amendment was set forth, and there is nothing in the language of the proposed amendment which indicates any intent to postpone the effective date of the amendment.

It is true that the Legislative Council noted in its analysis that the effective date of the legislation implementing the amendment was July 1, 1982. It stretches logic to absurdity to conclude that a reference to the effective date of legislation implementing an amendment somehow overrides the clear language that the amendment becomes valid when approved by the electors and upon proclamation of the governor. Nor is there any sense to the suggestion that the amendment would be valid but not effective until a later date. The same language that the proposed amendment would become valid when approved by the electorate and proclaimed by the governor was contained in all six proposed constitutional amendments submitted to the voters in the 1980 election. There is no suggestion that the other amendments are somehow valid but not effective.

It is my belief that the majority has misunderstood the legislative intent in this whole matter. At the time the proposed amendment was submitted to the public, the legislature was convinced that Article 15, Section 6 of the Arizona Constitution empowered them to enlarge the powers of the Corporation Commission to include businesses in categories not described in Section 2 of Article 15. Thus, the proposed constitutional amendment would become effective when passed, but the legislation in effect prior to the amendment would remain in effect until replaced on July 1, 1982 by the legislation transferring safety regulation of transportation to the Department of Transportation. Our decision in *Rural/Metro Corporation v. Arizona Corporation Commission, supra,* holding that the legislature could not enlarge the types of businesses to be regulated by the Corporation Commission caused a derailment in the transportation deregulation timetable. The constitutional amendment withdrew the regulation of transportation from the jurisdiction of the Corporation Commission, and the holding in the *Rural/Metro* case deprived the legislature of the authority to keep transportation under the control of the Corporation Commission until the effective date of the legislation transferring it to the Department of Transportation.

Instead of the tortured construction of the constitutional amendment presented in this case, the proper remedy should have been a one-day special session of the legislature at which the effective date for transfer of safety regulation of the transportation industry to the Department of Transportation could have been advanced.