645 P.2d 801

**McELHANEY CATTLE COMPANY, an Arizona corporation; S & V Cattle Company, an Arizona partnership; and Gary and Carol Oden, individually, Appellees,**

v.

**Alberta SMITH, in her capacity as Yuma County Assessor; Bill F. Walker, as Treasurer of Yuma County, Arizona; Yuma County, Arizona; and the Arizona Department of Revenue, Appellants.**

**No. 15433–PR.**

Supreme Court of Arizona, En Banc.

April 19, 1982.

Rehearing Denied May 25, 1982.

288

Robert K. Corbin, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Rolle, Jones, Benton & Cole by F. Keith Benton, Yuma, Jennings, Strouss & Salmon by K. Layne Morrill, Charles R. Hoover, Neil Vincent Wake, Phoenix, for appellees.

HOLOHAN, Chief Justice.

This case presents the question whether cattle being fed at a commercial feedlot are "inventory" exempt from taxation under either the "wholesaler" exemption provided by Article IX, § 2 of the Arizona Constitution or the "manufacturer" exemption provided by Article IX, § 13. We conclude that neither exemption is applicable.

This action was filed by McElhaney Cattle Company (McElhaney), S & V Cattle Company (S & V) and Gary Oden and Carol Oden (Odens) (collectively referred to as the taxpayers) against the taxing authorities of Yuma County and the Arizona Department of Revenue. The action sought a determination that feeder cattle owned by the taxpayers during 1975 were exempt from ad valorem taxation, and in addition, sought a refund for additional taxes paid under protest because of the disallowance of their claimed exemption.

After trial, the superior court ruled that all three taxpayers were entitled to the claimed exemptions under either § 2 or § 13 of Article IX of the Arizona Constitution and that McElhaney and S & V were entitled to a refund of taxes paid under protest.

The taxing authorities appealed. The court of appeals, with one judge dissenting, affirmed, holding that the feeder steers owned by the taxpayers were exempt from taxation under the "wholesaler" exemption provided by Article IX, § 2. *McElhaney Cattle Co. v. Smith*, 132 Ariz. 306, 645 P.2d 821 (1 CA–CIV 4746, filed March 3, 1981). The court did not determine whether the taxpayers were also entitled to the Article IX, § 13 "manufacturers" exemption. We granted the taxing authorities' petition for review.

The facts necessary for the resolution of this case are that McElhaney is a corporation which operates a large commercial cattle feedlot in Yuma County, Arizona. Gary C. Oden is McElhaney's president and general manager. S & V Cattle Company is a partnership comprised of Sam McElhaney and his wife, Vennie McElhaney. S & V is separate and distinct from McElhaney Cattle Company, and was established to engage in owning and feeding cattle. The Odens also own and feed cattle in their individual capacities. The taxing authorities did not attempt to distinguish among the taxpayers as to the applicability of the exemptions, either before the court of appeals or before this court, so we will also treat all the taxpayers similarly.

The McElhaney feedlot was established approximately 30 years ago and at the time of trial had a capacity of approximately 55,000 head of cattle. The feedlot has a turnover of cattle approximately 1.3 times per year, so that if it operated at capacity year-round, approximately 70,000 head of cattle would be processed through the feedlot. Because of certain credit limitations, the taxpayers at any given time are limited to feeding 20,000 to 25,000 head of cattle owned by them. Because of the fixed costs of the operation, significant economic savings per head of cattle can be achieved by operating the feedlot at full capacity. The testimony indicated that, primarily to reduce the taxpayers' unit cost for feeding their own cattle, the taxpayers also feed cattle belonging to others at the McElhaney lot. The taxpayers are only claiming that the tax exemptions apply to the cattle that they themselves own.

During the 30 years McElhaney has been in the feedlot business, significant technological and scientific developments in the

areas of nutrition and genetics have affected the way cattle are raised for slaughter. Scientists have determined the nutritional requirements of the cattle and have developed combinations of nutrients which when fed to calves produce rapid weight gain and develop desirable qualities in the meat. These highly technical diets are prepared using elaborate and sophisticated machinery, including mixers, weighing systems, metering devices, electrical control systems, grain flaking equipment, bins, and storage elevators. Genetic developments have allowed the feeder to select breeds of calf which will develop into cattle yielding the grade of meat the feeder desires. The feeder purchases "range" or "pasture" calves weighing from 250 to 400 pounds. Since 99% of these are bull calves, the feeders castrate them so that the calves will not develop the heavy front shoulders and neck characteristics of bulls, which produce undesirable cuts of meat. However, because castration reduces the potential rate of weight gain, female hormones are implanted in the steer to offset this loss of gain. These hormones also cause the growing steer to develop more heavily in the hindquarters, from which the most desired cuts of meat are obtained. The combined effects of diet, castration, and hormone treatments produce what the court of appeals described as "an animal with a heifer form on a bull frame." *Id.*, at 824. Except for a minimal number of steers which are slaughtered for home and friend consumption, all of the "finished" steers are sold to meatpackers, which slaughter the animals and sell the carcasses to stores for resale to the ultimate consumer.

## THE ARTICLE IX, § 2 "WHOLESALER" EXEMPTION

Article IX, § 2 of the Arizona Constitution provides in part:

> Stocks of raw or finished materials, unassembled parts, work in process or finished products constituting the inventory of a retailer or wholesaler located within the state and principally engaged in the resale of such materials, parts or products, whether or not for resale to the ultimate consumer, shall be exempt from taxation.

Neither side contends that the taxpayers are "retailers." The trial court and the court of appeals held that the taxpayers' feeder cattle were "raw or unfinished materials, ... work in process or finished products constituting the inventory of a ... wholesaler ... principally engaged in ... resale" and thus exempt from taxation.

■ Although the taxing authorities argue that the taxpayers were not "principally engaged in ... resale" because they are "principally" cattle feeders, the evidence presented reasonably supports the trial court's conclusion that the taxpayers were "principally engaged" in the resale of the cattle. The entire feedlot operation was geared towards reselling the taxpayers' cattle at a profit. Although slightly less than half of the cattle fed at the feedlot were owned by the taxpayers, the evidence is clear that the sole purpose for feeding other cattle there was to lower the per-head cost of feeding the taxpayers' own animals. We are satisfied that the taxpayers have shown themselves to be "principally engaged in the resale" of cattle.

Next, the taxing authorities contended that the taxpayers were not "wholesalers." They argued that the ordinary meaning of "wholesaler" is "a merchant who buys and sells merchandise." The taxing authorities contended that live cattle are not "merchandise," and that, therefore, the taxpayers did not qualify as "wholesalers."

Additionally, the taxing authorities deny that cattle can be classed as the type of inventory described in the constitutional provision at issue.

■ The governing principle of constitutional construction is to ascertain and give effect to the intent and purpose of the framers of the constitutional provision and of the people who adopted it. *County of Apache v. Southwest Lumber Mills, Inc.*, 92 Ariz. 323, 376 P.2d 854 (1962); *State ex rel. Morrison v. Nabours*, 79 Ariz. 240, 286 P.2d 752 (1955). Extrinsic evidence may be used to show the intent when the provision is not clear upon its face. *Desert Waters, Inc. v.*

*Superior Court*, 91 Ariz. 163, 370 P.2d 652 (1962). We may consider the interpretation in light of the history behind the provision, the purpose sought to be accomplished by its enactment, and the evil sought to be remedied. *Ruth v. Industrial Commission*, 107 Ariz. 572, 490 P.2d 828 (1971); *State ex rel. Morrison v. Nabours, supra.*

When the words of a constitutional provision are not defined within it, the meaning to be ascribed to the words is that which is generally understood and used by the people. *Downs v. Sulphur Springs Valley Electric Coop.*, 80 Ariz. 286, 297 P.2d 339 (1956); *Valley National Bank v. First National Bank*, 83 Ariz. 286, 320 P.2d 689 (1958). When a constitutional provision is clear and logically capable of only one interpretation, no extrinsic matter may be shown in support of a construction which would vary its apparent meaning. If, however, the constitutional language is ambiguous, or a construction is urged which would result in an absurdity, a court may look behind the bare words of the provision to determine the conditions which gave rise to it and the effect which it was intended to have. *American Bus Lines, Inc. v. Arizona Corporation Commission*, 129 Ariz. 595, 633 P.2d 404 (1981); *Ward v. Stevens*, 86 Ariz. 222, 344 P.2d 491 (1959).

It is not suggested that the language of the constitutional provision at issue is ambiguous, nor are we referred to any circumstance in the history of the adoption of the amendment which would require us to give a meaning to the words used other than that commonly employed.

The publicity pamphlet published by the Secretary of State for the 1964 election, at which the constitutional provision at issue was adopted, contained only one published argument in favor of the provision as follows:

THE ONLY PUBLISHED ARGUMENT:

If you want greater security for present workers, greater industrial growth, more jobs for Arizona people and higher wages in Arizona, vote "Yes" on initiative # 102.

Initiative # 102 is designed solely and simply to eliminate the inventory tax of raw materials, work in process, and finished products on Arizona retailers and wholesalers. A "Yes" vote on proposition # 102 means more warehousing and industrial growth in our state and will provide more jobs for more Arizona people. This tax shuts industries out of Arizona which otherwise would locate here. Such industries would pay taxes on machinery, equipment, buildings, real estate, state income taxes and sales taxes. A "Yes" vote will not pass on any additional tax to small home owners of Arizona. In fact, the only way to reduce the tax burden of small home owners and increase the state's general tax fund is to bring more business into Arizona and insure new sources of tax revenue. Insure more jobs for the people of Arizona and more industrial growth by voting "Yes" on # 102.

SPONSORED BY: Small Business Association, Juanita B. Ames, President; Allen A. Jones, Executive Secretary.

Nothing in the public material furnished to the electorate indicated any suggestion that the amendment was to apply to agricultural pursuits or cattle raising. It is significant that during the years that the constitutional provision has been in effect the exemption has never been applied to cattle raisers. If an exemption had been intended it would seem that cattle raisers, soon after the passage of the amendment, would have applied for the exemption from taxation.

The little history available through the publicity pamphlet and the actions of people after the enactment of the amendment point to the conclusion that the amendment was intended to apply to wholesalers and retailers dealing in inanimate products produced by manufacturing and processing. There is nothing in the legislative history at the time of the enactment of the amendment or for some time thereafter which would indicate any intention by anyone to include cattle raisers or farmers within the meaning of the term wholesaler. If the drafters of the amendment had in-

tended to include agricultural pursuits in the exemption "it is difficult to believe that [they] would have attempted to carry it into effect in such an uncertain and doubtful manner, when [they] could have done so easily and naturally." *White v. Moore*, 46 Ariz. 48, 58, 46 P.2d 1077, 1081 (1935).

The taxpayers have the burden of establishing the right to an exemption from taxation. *See State v. Yuma Irrigation Dist.*, 55 Ariz. 178, 99 P.2d 704 (1940); *Conrad v. County of Maricopa*, 40 Ariz. 390, 12 P.2d 613 (1932); *County of Maricopa v. North Central Development Co.*, 115 Ariz. 540, 566 P.2d 688 (App.1977). Under the requirements of the constitutional provision the taxpayers must establish not only that they are wholesalers or retailers, but they must also show that their inventory consists of stocks of raw or finished materials, unassembled parts, work in process or finished products. Although the taxpayers argue that the cattle fed at their lot qualify as raw or finished materials, work in process or finished products, the common understanding of the meaning associated with those terms does not include cattle raising.

The common meaning of "raw materials" is "substances out of which other products can be made." A calf is not a lump of clay to be remolded by the taxpayers into a more salable shape. The taxpayers do not use a bull calf as raw material to construct "an animal with a heifer form on a bull frame." Rather, the taxpayers alter the natural growth patterns of the bull calf so that what eventually develops is the "finished steer." Nor is a calf "work in process," or "finished products." While the taxpayers' activities on the feedlot are undoubtedly "work," they do not "work on the calf" and thereby "make the calf into" a mature steer. The work of castration, hormone treatments, and formulation of feed merely alters the calf's environment and thus influences the natural genetically-determined course of the calf's development. Stated in another fashion, the taxpayers' efforts are not directed toward taking one object, the calf, and through some process creating another product, the steer. The

adult animal is implicit in the calf, and it is irrelevant that the exact form of the adult is affected by the environment in which it develops.

Much is made of the sophisticated operation conducted by the taxpayers to produce steers for market, but the fact remains that their business is essentially that of a livestock raiser, a business not generally understood to be a wholesaler.

We hold that the taxpayers are not entitled to the tax exemption under Article IX, § 2 of the Arizona Constitution.

### THE ARTICLE IX, § 13 "MANUFAC- TURER" EXEMPTION

Article IX, § 13 of the Arizona Constitution provides in part:

No tax shall be levied on raw or unfinished materials, unassembled parts, work in process or finished products, constituting the inventory of a manufacturer or manufacturing establishment located within the state and principally engaged in the fabrication, production and manufacture of products, wares and articles for use, from raw or prepared materials, imparting thereto new forms, qualities, properties and combinations . . . .

The trial court found that the taxpayers were exempt from taxation under this constitutional provision, stating that "the feedlot operation in this case . . . constitutes a manufacturing process." (Order for Judgment of October 26, 1978 at p. 4.) The trial court did not make any specific finding as to whether the taxpayers were "principally engaged" in manufacturing, but that court did state that they were "principally engaged in . . . resale" under the Article IX, § 2 exemption, as discussed above. Because the court of appeals found that the taxpayers were exempt under Article IX, § 2, that court did not determine whether the taxpayers' operation qualified them for exemption as "manufacturers" under Article IX, § 13. Our holding that the taxpayers are not exempt under Article IX, § 2 requires us to determine whether they are qualified for the Article IX, § 13 exemption.

The taxpayers in their brief argued that they were principally engaged in resale, against the taxing authorities' contention that they were principally engaged in cattle feeding. The taxpayers alleged that the feeding and selling aspects of their business "are just component parts of an integrated operation" and that the "primary or principal end and aim of that integrated process is the wholesaling of the finished steers." Appellees' Answering Brief 32.3. Indeed, they stated that "The feedlot activity is undertaken for no purpose other than to prepare the animals for ultimate resale." *Id.* at 35. The taxing authorities in their reply brief contend that the taxpayers cannot be both principally engaged in the resale of products and principally engaged in the manufacture of the same products at the same time.

The essential point dispositive of this issue is that the taxpayers are not manufacturers. The analysis applied to Article IX, § 2 is equally applicable to Article IX, § 13. It strains the common meaning of words beyond limit to label a cattle raiser as a manufacturer. The purpose of the manufacturers' exemption was to encourage industrial development. *County of Apache v. Southwest Lumber Mills, Inc., supra.* There is nothing in the history of the manufacturers' inventory exemption which suggests any intention by the drafters or the public to include agricultural pursuits or cattle raising within the meaning of the term "manufacturer."

The taxpayers are not manufacturers so they are not entitled to the tax exemption authorized by Article IX, § 13.

The judgment of the superior court is reversed, and the opinion of the court of appeals is vacated. The matter is remanded to the superior court with instructions to enter judgment in favor of the taxing authorities and deny all relief to the taxpayers.

GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.

CAMERON, Justice, dissenting.

For the reasons so ably stated by Judge Jacobson in the majority opinion of the Court of Appeals, 132 Ariz. 306, 645 P.2d 821 (App.1981), I dissent.