SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| SARAH M. HEATH, | ) | Arizona Supreme Court |
| | ) | No. CV-07-0222-PR |
| Petitioner, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-SA 06-0197 |
| THE HONORABLE WILLIAM T. KIGER, | ) | |
| JUDGE OF THE SUPERIOR COURT OF | ) | Yavapai County |
| THE STATE OF ARIZONA, in and for | ) | Superior Court |
| the County of Yavapai, | ) | No. CR82006-0397 |
| | ) | |
| Respondent Judge, | ) | |
| | ) | |
| STATE OF ARIZONA, | ) | **O P I N I O N** |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |
| _____ | ) | |

Order of the Superior Court in Yavapai County
The Honorable William T. Kiger, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
215 Ariz. 119, 158 P.3d 248 (2007)

**VACATED**

_____


DAMON A. ROSSI                                          Prescott
      By    Damon A. Rossi

And

ABIGAIL JENSEN, P.C.                                     Prescott
      By    Abigail Jensen
Attorneys for Sarah M. Heath

SHEILA SULLIVAN POLK, YAVAPAI COUNTY ATTORNEY            Prescott
      By    Tina R. Ainley, Deputy County Attorney

Dennis M. McGrane, Deputy County Attorney
Attorneys for State of Arizona

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                    Phoenix
    By   Diane Gunnels Rowley, Deputy County Attorney
Attorney for Amicus Curiae Maricopa County Attorney's Office
_____

**M c G R E G O R**, Chief Justice

¶1    Under Article 2, Section 22, of the Arizona Constitution, persons charged with a crime can be released on bail except in limited circumstances.   One such circumstance occurs when a person charged with a felony offense "is already *admitted to bail* on a separate felony charge and . . . the proof is evident or the presumption great as to the present charge."   Ariz. Const. art. 2, § 22.A.2 (emphasis added).   We hold that a defendant released on her own recognizance has been "admitted to bail" for purposes of Article 2, Section 22.A.2.

**I.**

¶2    On April 5, 2005, Sarah M. Heath was charged with three felony drug counts.   Heath entered into a plea agreement with the State in which she pled guilty to all the charges.   Under the terms of the plea agreement, the superior court released Heath on her own recognizance.   The agreement provided that Heath would participate in the Treatment Assessment Screening Center (TASC) program.   Upon successful completion of the TASC program, the court would dismiss two of the felony charges and designate the third, possession of drug paraphernalia, as a

2

misdemeanor. If Heath failed to complete the program, however, she would be sentenced on the felony charges to which she pled guilty.

¶3 Heath completed the TASC program, but before sentencing she was arrested and charged with three new felony drug counts. Citing Article 2, Section 22.A.2, the State moved to hold Heath without bail on the new felony charges. Heath argued that she was not "admitted to bail" at the time she allegedly committed the new felony offenses. After an evidentiary hearing, the superior court found that Heath "was on felony release at the time" of her arrest and that there was "proof evident or presumption great" that she had committed one of the new felony offenses. Thus, the court ordered Heath "held without bail until further order of the court."

¶4 Heath filed a petition for special action with the court of appeals, which accepted jurisdiction and granted relief. *Heath v. Kiger*, 215 Ariz. 119, 120 ¶ 1, 158 P.3d 248, 249 (App. 2007). The court determined that Article 2, Section 22.A.2, does not apply to defendants released on their own recognizance. *Id.* at 123 ¶ 24, 158 P.3d at 252.

¶5 We granted review to resolve this issue of statewide importance. *See* ARCAP 23(c)(3). We exercise jurisdiction pursuant to Article 6, Section 5.3, of the Arizona Constitution.

**II.**

3

¶6   Whether a defendant who has been released on her own recognizance is "admitted to bail" for purposes of Article 2, Section 22.A.2, presents a question of constitutional construction subject to de novo review. *See Massey v. Bayless*, 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996). When the language of a provision is clear and unambiguous, we apply it without resorting to other means of constitutional construction. *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). Ambiguity occurs when uncertainty exists about the meaning or interpretation of a provision's terms. *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

**A.**

¶7   This case turns on the meaning of the phrase "admitted to bail."[1]  The Arizona Constitution does not define this phrase. Under these circumstances, we ascribe to the phrase its natural, obvious, and ordinary meaning as understood and used by the people. *See McElhaney Cattle Co. v. Smith*, 132 Ariz. 286, 290, 645 P.2d 801, 805 (1982) ("When the words of a constitutional provision are not defined within it, the meaning to be ascribed to the words is that which is generally understood and used by

---

[1]   Article 2, Section 22.A.2, of the Arizona Constitution, states: "All persons charged with crime shall be bailable by sufficient sureties, except . . . [f]or felony offenses committed when the person charged is already *admitted to bail* on a separate felony charge and where the proof is evident or the presumption great as to the present charge." (Emphasis added.)

4

the people.").

¶8    In some instances, the meaning of a term is ordinary and obvious.    For example, in *Circle K Stores, Inc. v. Apache County,* the term "taxpayer" was found to have a common meaning ascribed by the populace.    199 Ariz. 402, 406 ¶ 11, 18 P.3d 713, 717 (App. 2001) (finding that a Webster's dictionary definition, which defined "taxpayer" as "[o]ne that pays or is liable for a tax," reflected the ordinary meaning of the term as understood by the populace).    In contrast, the phrase "admitted to bail" does not have an obvious and common meaning known by the people. In fact, even legal dictionaries fail to provide a consistent meaning for the term.[2]    Therefore, we turn to other aids to

---

[2]    For example, Black's Law Dictionary assigns "bail" multiple definitions, one of which is consistent with a finding that one released on his or her own recognizance has been "admitted to bail," and another of which is not:

  1. A security such as cash or a bond . . . .
  2. The process by which a person is released from custody either on the undertaking of a surety or on his or her own recognizance.

Black's Law Dictionary 150 (8th ed. 2004).    Also, the fifth edition of Black's Law Dictionary defined "personal recognizance" in part as "[a] *species of bail* in which the defendant acknowledges personally without sureties his obligation to appear in court at the next hearing or trial date of his case."    Black's Law Dictionary 1030 (5th ed. 1979) (emphasis added).    The current version of Black's Law Dictionary, however, defines the term "personal recognizance" as the "release of a defendant in a criminal case in which the court takes the defendant's word that he or she will appear for a scheduled matter or when told to appear."    Black's Law Dictionary 1299 (8th ed. 2004).

5

assist us in interpreting the phrase.

B.

¶9　When discerning the meaning of a constitutional provision, "[o]ur primary purpose is to effectuate the intent of those who framed the provision and, in the case of an amendment, the intent of the electorate that adopted it." *Jett*, 180 Ariz. at 119, 882 P.2d at 430. If a constitutional provision is not clear on its face, we can use extrinsic evidence to show the intent of the framers and the electorate that adopted it. *See McElhaney Cattle Co.*, 132 Ariz. at 289-90, 645 P.2d at 804-05. Because each voter's intent may differ, however, determining the actual intent of the electorate in adopting the amendment is an elusive task. *See Randolph v. Groscost*, 195 Ariz. 423, 427 ¶ 15, 989 P.2d 751, 755 (1999). When we find ambiguity in a provision, "we may consider the history behind the provision, the purpose sought to be accomplished, and the evil sought to be remedied." *Jett*, 180 Ariz. at 119, 882 P.2d at 430.

¶10 As originally enacted, Article 2, Section 22 prescribed that all persons charged with crimes, other than capital offenses, are bailable by sufficient sureties. Ariz. Const. art. 2, § 22 (1910). The constitutional amendment at issue here, § 22.A.2, which limits release for certain felony offenses, was proposed by the legislature in April 1969 and approved by a majority of electors in the November 1970 general

6

election. Ariz. Const. art. 2, § 22.A.2, cmt. (Supp. 1983).

¶11 Heath maintains that Arizona statutes and court rules related to pre-trial release clearly differentiate between release on bail and release on one's own recognizance and therefore the phrase "admitted to bail" could not have been intended to encompass release on one's own recognizance. Heath's argument does not lack basis. For example, Arizona Revised Statutes (A.R.S.) section 13-1577.B (1969), which was enacted by the same legislature that referred § 22.A.2 to the voters,[3] arguably differentiates between those released on bail and those released on their own recognizance: "Any person charged with a public offense which is bailable as a matter of right shall . . . be ordered released pending trial on his own recognizance *or* upon the execution of bail in an amount specified by the judicial officer." (Emphasis added.) *See also* A.R.S. § 13-604.R (Supp. 2007) (providing enhanced sentences for those convicted of a felony committed while the defendant "is released on bail *or* on the defendant's own recognizance" (emphasis added)); Ariz. R. Crim. P. 7.2(c)(1) (Supp. 2007) (prohibiting release of a defendant "on bail *or* on the person's own recognizance" under certain circumstances (emphasis added)).

---

[3] *See* Release on Bailable Offenses Prior to Trial, 1969 Ariz. Sess. Laws, ch. 129, § 5 (1st Reg. Sess.); H. Con. Res. 2, 1969 Ariz. Sess. Laws 523 (1st Reg. Sess.).

¶12 Although Heath's argument finds some support in a parsing of statutes and court rules, "[c]ourts should avoid hypertechnical constructions that frustrate legislative intent." *State v. Estrada*, 201 Ariz. 247, 251 ¶ 19, 34 P.3d 356, 360 (2001) (quoting *Calik v. Kongable*, 195 Ariz. 496, 501 ¶ 20, 990 P.2d 1055, 1060 (1999)); *see also United States v. Superior Court*, 144 Ariz. 265, 275-76, 697 P.2d 658, 668-69 (1985) (noting that constitutional provisions should be interpreted "with an eye to syntax, history, initial principle, and extension of fundamental purpose"). Moreover, at the time Arizona adopted Article 2, Section 22.A.2, this Court apparently interpreted the term "bail" to include release on one's own recognizance. Arizona Rule of Criminal Procedure 236 (1956) (in effect at the time of amendment), provided that a defendant "if bailable shall be released on bail *either* on his own recognizance *or* on the undertaking of sureties." (Emphasis added.) Thus, even a technical definition of the term "bail" could reasonably be said to include release on one's own recognizance.

¶13 We may also consider legislative history to determine the intent of those who framed the provision. Here, the available history is limited. The records of the committee minutes of the hearing on the provision do not document the reasons for adopting Article 2, Section 22.A.2. *See* H. Judiciary Comm.,

Meeting Minutes, 29th Leg., 1st Reg. Sess. (Feb. 18, 1969); S. Judiciary Comm., Meeting Minutes, 29th Leg., 1st Reg. Sess. (Mar. 26, 1969). To determine the intent of the electorate, courts may also look to the publicity pamphlet distributed at the time of the election. *See McElhaney Cattle Co.*, 132 Ariz. at 290-91, 645 P.2d at 805-06 (utilizing published argument to determine intent behind a constitutional provision). The publicity pamphlet published by the Secretary of State for the 1970 election at which the constitutional provision at issue was adopted, however, also provides limited assistance at best. The pamphlet contained only one published argument. The argument, offered by a citizens' committee in support of the amendment, indicated that the purpose of the amendment was to prevent criminals from continuing to commit new felony offenses while awaiting trial on an earlier felony charge.[4]

---

[4] The full argument stated:

> One of the major reasons for the rapidly increasing crime rate in Arizona is the problem of repeat offenders, who continue their lives of crime while out on bail, awaiting trial. As many as twelve major offenses have been committed by individuals who have been released, while their trials are delayed many months. Society should be protected from these professional criminals. Referendum No. 100 should provide protection to the law abiding citizens, when bail and release are denied if there is reasonable evidence to believe that an individual has committed a second felony offense, while out on bail awaiting trial for a first offense. Trials should be expedited, if the victim [sic] is not free, thereby

9

¶14 Just two years after the amendment was adopted, the court of appeals identified the purpose of the amendment as being to avoid the "revolving door" scenario in which an offender continues to commit crimes while released on bail:

> [In adopting Article 2, Section 22.A.2], it was recognized that . . . due to the length of time it takes to get to trial and due to the fact that the offender is able to post bail, persons committing crimes are able to commit several offenses while out on bail, knowing that on each subsequent offense they will be able to raise bail . . . . [I]t is entirely reasonable for the people of Arizona to preclude such occurrences from happening in this state.

*State v. Garrett*, 16 Ariz. App. 427, 429, 493 P.2d 1232, 1234 (1972); *see also State ex rel. Romley v. Superior Court*, 185 Ariz. 160, 164, 913 P.2d 500, 504 (App. 1996) ("[B]y the adoption of Article 2, § 22(2), the people of the State of Arizona have spoken to keep repeat offenders from continuing to commit crimes while out on bail.") (internal quotation and alteration omitted). We conclude that the most reasonable explanation of the purpose of the amendment is that defined by

---

speeding up the court processes. We strongly support passage of this referendum as a means of self-preservation and self-protection from criminals whose profession make society their victim.

*State of Arizona Referendum and Initiative Publicity Pamphlet, Proposed Amendments to the Constitution* (1970). The president of the citizens' committee who submitted the published argument testified before the Senate Judiciary Committee in support of the amendment. S. Judiciary Comm., Meeting Minutes, 29th Leg., 1st Reg. Sess., at 2 (Mar. 26, 1969).

the court of appeals. If the purpose is to prevent those charged with felonies but released pending trial from committing additional crimes, the amendment should apply to all those released. If, then, we were to interpret "admitted to bail" as excluding release on one's own recognizance, the purpose of the amendment would be frustrated.

¶15 Heath argues that logic requires that we distinguish between defendants released on bail and defendants released on their own recognizance. Specifically, she contends that defendants released on their own recognizance must have been deemed more trustworthy in terms of their promise to reappear in court than those required to post bail. Thus, she concludes, the more trustworthy defendants should remain eligible for release on the new charges while defendants who were required to post bail should be denied release of any kind. We are not persuaded by this argument, which would reward those defendants who broke the trust our courts bestowed upon them.

¶16 Further, such an interpretation would lead to illogical results: A defendant released on a relatively small bond would not be eligible for release if arrested on a new felony charge, whereas a person released on his or her own recognizance would be eligible for release. It appears inconsistent with the provision's purpose to allow a defendant released on his or her own recognizance to remain at large after committing a new

11

felony offense, but to revoke release of a defendant who paid a minimal bond under the same circumstances. *See Estrada*, 201 Ariz. at 251 ¶¶ 16-18, 34 P.3d at 360 (noting that a provision should be interpreted to avoid absurd results). We therefore conclude that the phrase "admitted to bail" includes those defendants released on their own recognizance.

**III.**

**¶17** For the foregoing reasons, we vacate the court of appeals' decision and affirm the order of the superior court holding Heath without bond.

_____
Ruth V. McGregor, Chief Justice

CONCURRING:

_____
Rebecca White Berch, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____
W. Scott Bales, Justice